## Foster *against* Jack.

An attorney at law may maintain an action on an implied *assumpsit*, for professional services rendered by him, without regard to the quality of the services.

The statute of limitation does not commence to run against the claim of an attorney at law for professional services so long as the debt which he seeks to recover for his client remains unpaid.

ERROR to the common pleas of *Westmoreland* county.

This was an action of *assumpsit* by Alexander W. Foster, Esq. against William Jack.

The first count in the declaration states, " that the said defendant on the 1st day of January 1819, in consideration that the plaintiff would commence and prosecute, as the attorney, counsel and advocate of the defendant, suits in the court of common pleas of Westmoreland county, against the President, Managers and Company of the Stoystown and Greensburgh Turnpike Road Company, upon claims which he then had or might afterwards acquire, at the special instance and request of the defendant—he, the said defendant, in consideration thereof, then and there promised and agreed with the plaintiff, to well and truly pay to the plaintiff so much money as he reasonably should deserve to have for his services as aforesaid, in commencing and prosecuting said suits as aforesaid, as soon as said suits should be decided, and the money recovered in said suits be duly paid to the plaintiff, and the defendant be thereunto afterwards requested.

The plaintiff then avers, that relying on the promise and agreement of the defendant, he afterwards, at the special instance and request of the defendant, did commence and prosecute suits to judgment and execution on the said claims of the defendant, against the said President and Managers, &c. in said court, &c., to wit : No. 96, No. 97, No. 98, No. 99 and No. 100, of February term, and No. 26, of May term 1820, of which the defendant afterwards, on the 1st of September, in the same year, had notice.

The plaintiff further avers that the moneys recovered in said suits were afterwards, on the 9th and 27th of July 1831, paid to the defendant ; and the plaintiff further avers, that he reasonably deserved to have for his said services the sum of 400 dollars, of which the defendant afterwards, on the 1st of September of the same year, had notice, and was then and there requested to pay the same.

The second count states that the defendant on the 1st day of September 1831, in consideration that the plaintiff had before that time attended to certain other suits, as the attorney, counsel and

[Foster v. Jack.]

advocate of the defendant, at his special instance and request, until the same had been finally decided in said court, &c., in which court the said suits had been pending, and the money in said suits duly paid—then and there assumed and promised to pay the plaintiff as much money as he reasonably deserved to have for his attention and services, as the attorney, counsel and advocate of said defendant.

The plaintiff avers, that he did faithfully and diligently attend to said suits, as the attorney, counsel and advocate of the defendant, until the same were, before said 1st day of September 1831, finally decided in said court, and the money recovered duly paid to the defendant, to wit on the 27th day of July 1831; the plaintiff further avers, that for his services so rendered to the defendant, as his attorney, &c. in said cause, he reasonably deserved to have other 400 dollars; of all which the defendant afterwards, on the same day, &c. had notice.

Nevertheless, the defendant, although often afterwards, and after said promises, to wit on the 2d of September 1831, was requested to pay said several sums of money, and often afterwards; yet the same to pay, or any part thereof, the said defendant hitherto wholly neglected and refused, and still doth neglect and refuse to pay, to the damage of the plaintiff 800 dollars—and therefore, &c.

The defendant appeared by his attorney, and on the 1st of January 1834 pleaded "*non assumpsit, non assumpsit infra sex annos,* payment with leave, &c." The plaintiff replied, "that the defendant did assume, &c., within six years, &c.; that the cause of action, &c. accrued within six years, &c., and *non solvit,*" &c., and takes issue on defendant's pleas.

The plaintiff, on the trial of the cause, gave in evidence the record and proceedings of the suits numbered and described in the first count of the declaration.

In 1819 these causes had been referred to arbitrators, who made a report in each of them in favour of the plaintiff for different amounts, from which there was no appeal. Nothing was realized upon these judgments until 1831, when, out of an appropriation by the state, forty-eight per cent was paid to the plaintiff, William Jack, on his claims. The plaintiff also called witnesses to prove that five per cent was the fee usually allowed to attorneys for collecting money.

The plaintiff requested the court to charge the jury upon the following points:

1. That if the service rendered by the plaintiff in his capacity of attorney was continuous until that relation was determined by the act of the defendant within a period of six years before the bringing of this action, the act of limitations will not apply.

2. That if the jury are satisfied that, by the common and established usage of the profession, the rewards of counsel are contingent on the recovery of the claim sued, and payable out of the proceeds when collected; then, in the absence of any special contract in the present case, the cause of action did not accrue until the payment of

the money recovered by the awards given in evidence, and consequently the present claim, being sued within a period of six years thereafter, is not barred by the act of limitations.

3. That the plea of *non assumpsit infra sex annos*, is no answer to the first count of the declaration, and that the defendant, in reply to the said count, cannot take advantage of the act of limitations under the said plea, which is bad and insufficient.

4. That if the jury believe the evidence on the part of the plaintiff in the present case, the law will imply a promise on the part of the defendant, on recovering the moneys on the several judgments respectively, as proved, to pay the plaintiff a reasonable compensation for his services as attorney in the said suits.

5. That the jury may presume a promise on the part of the defendant to pay to the plaintiff a reasonable compensation for his services in said suits brought by him or for his use, on his recovering the moneys recovered therein respectively.

Whereupon the court delivered the following charge to the jury :

The plaintiff claims a reasonable compensation for official services, in bringing and carrying on to judgment six several actions against the Greensburgh and Stoystown Turnpike Road Company ; three of them at the suit of the defendant—the other three for the use of Wilson Jack. The declaration of the plaintiff here alleges that the plaintiff had been engaged by the defendant in all these suits, but of this there is no testimony. It appears that in consequence of an act of assembly, a certain sum was appropriated for the payment of the creditors of the turnpike road company, under which the present defendant recovered not quite half the amount due him, and certificate of the balance, which still remains unpaid : Wilson Jack, the other party, received the same proportion. By calculation, if correct, the whole principal is less than 5000 dollars. I would first observe that the suits against the company do not appear to have been contested; from the very vouchers being orders given by the board of managers, the claims admitted of no dispute. They were all settled by the arbitrators on the same day, and no appeal was taken in either of them. It is not easy to discover any special services on the part of the plaintiff in procuring these awards. In short, there was no occasion for any. It was all mere routine, laying the papers before the arbitrators, which, whether done by the plaintiffs themselves in those cases, or by their attorney, does not appear. A levy was afterwards made in one of the cases on part of the road in Somerset county ; but as this was altogether irregular, it certainly raises no merit for special services. Thus all the cases rest until the legislature interfere, by an act passed in the year 1830 or 1831 : under which, without any act of the present plaintiff, the defendant and his brother Wilson received less than half of the money due them ; not so much by virtue of the judgments, as under the original contracts—in fact, it would seem, from the testimony of Mr Johnston, treasurer of the company, that those who had brought suits which were considered

vexatious, were viewed with less favour than other creditors. The declaration does not allege any special contract, but it is contended an implied one, implied from the services done by the plaintiff in all the six actions. I am really at a loss to set any estimate upon them. It appears that he received the fees allowed by the law to attorneys, in all of them. The first count alleges that the defendant promised and agreed with the plaintiff to pay for his services in commencing and prosecuting the suit so much money as he, the plaintiff, should reasonably deserve to have, as soon as they should be decided and the money recovered duly paid : the plea of *non assumpsit* negatives this count, and puts the plaintiff on the proof of it. No proof of such a promise has been given, and it is not even alleged that there is any : of course the first count falls to the ground, being thus unsupported. The second count is what is called a *quantum meruit,* in the usual terms : to this, as well as to the whole case, the act of limitations has been pleaded, and upon this issue has been joined. It is not disputed but that the limitation applies to this second count, and that it has been properly pleaded by the terms *"non assumpsit infra sex annos,"* which denies any promise until within six years from the time the services, whatever they may have been, were actually rendered. I am therefore of opinion that the defendant is entitled to a verdict on the whole of the case.

Every part of the charge of the court was made a specification of error.

*Williams* and *Biddle,* for plaintiff in error.
*Coulter,* for defendant in error.

The opinion of the Court was delivered by
GIBSON, C. J.—Though dissatisfied with the decision of Mooney *v.* Loyd on principle and for its consequences, I did not dissent. On principle, because I was unable to comprehend why a valuable consideration might not raise an implied promise as well as support an express one ; and for its consequences, because I felt assured it would be found entirely incompatible with the business and necessities of both counsel and client here. As anticipated, it was received with almost universal disapprobation by the profession, not from the impulse of interest, but a conviction of its artificial structure and practical injustice. Its principle, if it can be said to have one, had its origin in the Roman law, when the practice of forensic oratory was so elevated as to be fancifully thought to be incapable of stooping to mercenary considerations without debasement. And the dignity of the robe, instead of any principle of policy, furnishes all the argument that can be brought to the support of it at the present day ; for it is hard to imagine a principle of policy that would forbid compensation for services in a profession which is now as purely a calling as any mechanical art. The English courts adopted it practically and professedly on the foundation of dignity. They stu-
IV.—2 s

diously restricted it to advocates, properly so called ; for actions for attorneys' fees are of daily occurrence. But the decision in Mooney *v.* Loyd descended a step lower, and, abandoning the ground of dignity altogether, gave the rule a much wider sweep than it has in England. Though it might appear from the report that the cause of action was compensation for services in the *trial* of a cause, it is an undeniable truth that all preparatory services were included, though these are such as are rendered, in England, by the class called attorneys in the strictest sense. No discrimination was made in the expressions of the court, the rule of the decision being predicated of professional services generally. It is known to every member of the bar, how narrow is the compass of his duties as an advocate. His most constant and effective efforts are made in the preparatory stages ; and his agency in directing the process of execution is an invaluable one. In fact, a substantial, if not a preponderating portion of professional business never finds its way to the ear of the judges at all ; and there are many gentlemen in honourable and lucrative practice, who are seldom heard at the bar. They practise strictly as attorneys, and to apply the rule of the Roman law to them, would be a perversion of it. Yet Mooney *v.* Loyd would have done it ; and the decision in Gray *v.* Brackenridge, by which it was overruled, seems to be as deeply seated in justice as it is in legal analogy. It was held in the latter that an attorney's action may be maintained on an implied *assumpsit*, and without regard to the quality of the services. The English rule was abolished by it without distinction between advocates and attorneys, as its analogue had been abolished by universal practice and without distinction between physicians and apothecaries. The subject was not susceptible of distinction ; nor would there be the same propriety in it where the habits and circumstances of the client require indulgence, as there is in England where the barrister's fee is handed to him with his brief. The questions upon this record, then, have respect to the *quantum* of the compensation, and the time it became demandable.

The plaintiff declared for a *quantum meruit*, and to fix its extent recourse was had to evidence that a *per centum* is usually retained out of the amount collected : from which it might have been inferred that nothing is demandable where nothing has been recovered. On the principles of all other actions—and it is not easy to see why they should not be applied to the action of an attorney—it is certain that the rate of compensation is independent of the benefit received. A physician is to be paid his bill though the patient die : and in every transaction of life, where there has not been negligence, want of skill or a stipulation to the contrary, labour is to be rewarded in proportion to the pains taken in it, and not in proportion to the results produced by it. The employer takes his chance of that. Ought, then, the usage spoken of to be resorted to in order to control the natural principles of the contract ? This is not the time nor

[Foster v. Jack.]

the place to discuss the legality of contingent fees; though it be clear that if the British statutes of champerty were in force here, such fees would be prohibited by them. But a contract of the sort is certainly not to be encouraged by implication from a questionable usage; nor established by less than a positive stipulation. The direction of the judge on this part of the case, was neither definite nor precise. The entire declaration has not been put on our paper books, but it was distinctly said by him to be founded on an implied, and not a special contract; yet he instructed the jury that the promise laid not having been proved or pretended, the first count fell to the ground; and thus, as it might appear to the apprehension of the jury, proof of an express promise was required to sustain an implied one. This, though erroneous, was certainly enough to dispose of the count; but in respect to the contract which, it had been contended, might be implied from performance, the judge remarked that the plaintiff had received the fees allowed to attorneys by law, and thus indicated, what perhaps was not meant, that he could be entitled to no more. The limitation of the legal fee, however, is to regulate the costs for counsel's fees between the parties, and not the compensation to be allowed between them and their agents. The latter would require a legal fee to be taxed to the attorney of the unsuccessful party also; and not only would it be unlawful to receive more, but even an express contract for it, which was sanctioned in Mooney *v.* Loyd, would not support an action. The insignificance of the allowance, however, precludes a belief that it was intended to be in full; and with this construction the practice has always accorded.

A recovery on the second count, in the ordinary form of a *quantum meruit*, was held to be barred by the statute of limitations, which was said to run from the performance of the services; and it must consequently have been supposed that the right of action accrued at that time. In Lyon *v.* M'Manus, 4 *Binn.* 167, an officer of the court—and an attorney is such—was precluded from having an action for fees in a cause depending. The decision was put upon an early practice of the province, handed down to the times of the commonwealth; and it certainly had a solid foundation in the nature of the contract as modified by the practice, which has respect, not to successive jobs, but continuous employment. That decision directly affected no more than the right of immediate action for fees expressly prescribed by the law; but the principle of it, subject to a particular modification presently to be noticed, is equally adapted to an action for compensation implied by the law. If there be a difference, it is in favour of an application of it to the contract of the attorney, of which it is certainly not a condition that he be at liberty to vex his client with an action for each item of service the instant it is rendered. The modification to be noticed is, that his right to sue is not necessarily postponed till judgment is had; nor does it then necessarily arise, especially where money is to be collected, or

[Foster v. Jack.]

the judgment is to be enforced by further proceedings. It may be his duty to expedite an execution, and attend to the thousand and one matters usually connected with it. When, then, shall his action accrue or the statute run? Not before demand be made, or the professional relation be dissolved. Great length of time, operating by its natural and not its prescriptive force, might perhaps be left to a jury to found a presumption of such dissolution with an abandonment of the action; but a mere suspension of proceedings from an apprehension that nothing might be got, would be a dangerous ground of inference; for how desperate soever the affairs of a debtor may seem, it is always impossible to say how soon they may be retrieved. If the money were subsequently lost for want of pursuit, might not the attorney be liable for it? The case of the debtor in the actions whose prosecution is the subject of this suit, is an instance of the fallaciousness of appearances. The company had nothing that was accessible to an execution; yet satisfaction to the extent of forty-eight per cent has been obtained. The money might have been paid in fact, as it was in law, on the judgments which had, by merger, become the debt; and can it be doubted that the attorney would have had authority to receive it? On the principle already indicated, the fact that the judgments did not actually accelerate the payment, is an immaterial one; nor is the fact that the company required them to be vacated before the money was paid, entitled to more consideration. The imposition of terms was an assumption of power for which the managers might have been dealt with by *mandamus*; and no arrangement which they were competent to make with their creditor, could impair the recourse of his attorney to the fund. It is unimportant, therefore, that payment was made directly to the client. In England such payment is tortious after notice, and may be restrained by the court. Even want of notice jeopards no more than the lien; for the attorney's recourse to the client remains the same. It was held in Ormerode *v.* Tate, 1 *East* 464, that the lien extends to money awarded the same as if it were recovered by judgment; and even that the attorney may compel it to be refunded if paid to the client after notice. I certainly do not pretend that there is a lien with us, or that this decision is an authority binding on us; yet I have no hesitation in adopting the principle of it for its good sense, so far as it indicates the recourse to be had to the client; according to which the plaintiff's compensation ought to be what it would have been had the money been received by him.

Judgment reversed, and a *venire de novo* awarded.