# Mosgrove, et al., *versus* Golden.

1. Where an amicable action is entered by agreement without pleadings, and is proceeded in to trial, such agreement is not a waiver of a statutory defence. Thus where, in such case, the plaintiff on the trial seeks to recover upon a cause of action more than six years old, the defendant may set up the bar of the statute of limitations.

2. In such case, after verdict, the case is to be treated as though pleadings had been filed conforming to the issue actually tried, in pursuance of the provisions of the Act of March 14th 1872 (P. L. 25).

3. One cannot maintain an action in his own name for services rendered both in his individual capacity, and also while a member of a partnership, on the dissolution of which he had acquired the interest of the retiring partner.

4. Where an attorney at law is retained for a special service, as to collect a debt or conduct a suit, the statute of limitations does not begin to run against his claim for compensation until the debt is collected or the suit ended, however long a time may elapse. Where, however, he is employed to furnish general professional advice and services, extending over a long period, without special agreement as to time of payment, he is entitled to demand payment within a reasonable time, and a reasonable time would not exceed a year. In such case the statute of limitations would bar a claim for compensation for more than six years' services.

5. Where the widow and children of an intestate requested the administrators to sue out a writ of error to a judgment obtained against them in an amicable action upon a claim against their decedent's estate: *Held,* that it was proper and prudent for them to comply with such request. A judgment obtained against administrators, in some circumstances, will not protect them in suffering the judgment to stand and paying it out of moneys of the estate.

6. Where the trial judge seals a general exception to the whole charge, notwithstanding a rule of court requiring specific exceptions, the Supreme Court will not decline to consider assignments of error founded on such general exception.

December 5th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Armstrong county :* Of July Term 1882, No. 170.

Amicable action, wherein E. S. Golden was plaintiff, and

James Mosgrove and William Pollock, administrators of J. E. Brown, deceased, were defendants.

There were no pleadings in the case, other than the agreement for the amicable action, which was as follows:

" It is hereby agreed that the Prothonotary of the said court shall enter the above suit upon his docket and that from the time of such entry the said action or suit shall be deemed to be depending in like manner as if the said defendants had appeared to a summons issued against them by the said plaintiff.

" And, whereas, the said plaintiff seeks in this suit to recover for professional services and counsel rendered by him to James E. Brown about his business generally and disbursements therein for a number of years prior to his death.

" And, whereas, the said defendants are uninformed as to the correctness and legality of such claim and deny the same.

"And now it is further agreed between the parties to the above named action, that a reference be made a rule of court for the referring of the matters hereinbefore set forth under the compulsory arbitration law of this commonwealth, and to be governed accordingly."   .   .   .   .

The case was tried before arbitrators who made an award in favor of the plaintiff for $23,813. On appeal from the award the case was tried before CHURCH, P. J., when a verdict was rendered for plaintiff for $47,092.50. A motion for a new trial was made, which the court discharged provided the plaintiff should file a remittitur of the excess of the verdict over $35,500, which the plaintiff accordingly filed, and judgment for the plaintiff was thereupon entered on the verdict, as reduced, for $35,500, to which judgment this writ of error was taken.

The following facts appeared on the trial:—James E. Brown died November 27th 1880. He had been in active business for more than twenty-five years, during which time the plaintiff, Mr. Golden, had been his confidential legal adviser, and his attorney-at-law in the trial of suits. The plaintiff claimed compensation for general legal services as counsellor-at-law, extending over a period from 1855 to the time of Mr. Brown's death in 1880. No declaration, bill of particulars or specification of claim was filed. (It was stated in the paper book of defendant in error that " The claim was for services rendered in unfinished business, a bill of particulars of which was given in evidence, without objection,"—but no bill of particulars was contained in, or referred to in the evidence as printed.)

During portions of the time covered by the claim, Mr. Golden had been in partnership with other attorneys-at-law; from 1855 until 1862, the firm name was Golden & Fulton; from 1862 until 1871, the firm was Golden & Neale; and from 1877 until 1879, Golden & Patton. These firms had been dissolved

[Mosgrove v. Golden.]

before the bringing of this suit, and the retiring partners had transferred their interests in the business of their respective firms to Mr. Golden.

Counsel for defendants did not deny that Mr. Golden, individually and as partner in said law firms, had rendered services in the trial of numerous suits and other matters to Mr. Brown, but they claimed that the course of business between Mr. Brown and Mr. Golden was such that said services were invariably paid for during the progress, or at the conclusion of such litigations; and, in support of said claim, they put in evidence forty-four separate receipts, signed by Mr. Golden, either in his individual or the firm name, specifying the suit or matter in which the services were rendered, and in a majority of cases reciting that the payment was "in full for services in above case." These receipts varied in amount from $5 to $500, the earliest bearing date August 2d 1856, and the latest July 9th 1880, amounting in all to $2,000. The plaintiff admitted the facts shown by these receipts, but insisted that they did not cover anything but services rendered in the matters of litigation specified therein, while his claim in this suit was for general professional and confidential advice in matters of business not involving actual litigation, extending over the entire period from 1855 to 1880, for which he had not received payment. The plaintiff called as witnesses the defendant, Mr. Mosgrove, who had formerly been a partner with Mr. Brown, the defendant Mr. Pollock, who had been an employé of Mr. Brown, and members of the bar, several of whom had been in Mr. Golden's office, as students or partners; these witnesses testified to the frequency and urgency of Mr. Brown's consultations with plaintiff, as his general counsel, and estimated the value of plaintiff's services variously at from $1,000 to $5,000 per annum.

The defendant Mosgrove was recalled on behalf of the defendants, and testified vaguely that he believed Mr. Brown had once paid plaintiff a sum of $500 in a certain matter, and he thought other sums, but he could not say when or how much. No other evidence was submitted on behalf of defendants, except the receipts above referred to.

Defendant's counsel submitted the following points :—

1. That there is no evidence of an express contract of hiring by the year to be submitted to the jury.

2. That there is no right to recover on a quantum meruit or an implied contract of hiring by the year, and there must be an express contract or a failure to recover.

3. The right to recover on a quantum meruit, or an implied contract, is applicable only for specific service rendered by an attorney in the shape of consultations, advice and trial of causes.

4. The moment the services are rendered and ended the

right of action accrues, and the statute of limitation begins to run.

5. The general relation of attorney and client in other business will not prevent the running of the statute for any specific services performed by an attorney.

6. But even if the court should be of the opinion that the plaintiff would be entitled to recover on a quantum meruit, or on an implied contract of hiring by the year, the right of action to recover would accrue at the end of each year, and the statute of limitations would run from the end of each year.

Answer. All these points are answered in the affirmative with this qualification, that there is no plea specially of the statute of limitations in this case, neither is there a promise to pay. There is no express promise or hiring, or contract to hire proven by which an implied promise to pay a given amount by the year is to be gathered. (Fifth, sixth, and seventh assignments of error.)

The court, in the general charge, said, inter alia :—" They [various witnesses] testified in your hearing, concerning the visits made by Mr. Brown to Mr. Golden, and in all and each of these visits, they stated the manner in which other business entrusted to Mr. Golden, had to give way to Mr. Brown's business. What advice he wanted he wanted immediately. You will give attention to all this, as upon this question of the amount of, and value and extent of the services of Mr. Golden, and for which he now seeks to recover in this suit. The time extends over a period of about twenty-five years, from 1855 to 1880, and for that period of time the plaintiff seeks to recover what his services as counsellor-at-law and adviser of Mr. Brown in his various transactions were worth, as you may find from the evidence. The witnesses on the part of the plaintiff varied in their estimate as to what would be the value of the plaintiff's services to Mr. Brown per annum. This plaintiff is not entitled to " quantum meruit " for his services. He is entitled, if at all, for the whole services as a whole, and when the witnesses on the part of the plaintiff testified to so much per annum, that was simply the reasoning process of their own minds, whereby the figures for that conclusion were deduced." (First assignment of error.)

. . . . " These receipts extended through a number of years, and judging from the evidence in the case, which is substantially uncontradicted, it is evident that for the labor performed it would seem a very small compensation for the services, and so far as these receipts exhibit there is no compensation for the services for which the plaintiff claims in this case." (Second assignment of error.)

. . . . " There are no special pleadings in this informal

[Mosgrove *v.* Golden.]

amicable action, and no pleadings in the case. These parties have seen fit to come to the jury without any formal issue being joined. There is no plea of the statute of limitations in this case. When one wants to take advantage of the statute of limitations it is to be pleaded specially. The plaintiff would be taken at great disadvantage if, during the trial of a case, the defendant could set up the statute of limitations. The defendant ought to put the plea upon record, so as to give the plaintiff notice that the question would be raised. It is not proper that the defendant should take advantage of the statute of limitations, by simply presenting a point after the testimony is all closed, and when the testimony was given in by the plaintiff without objection on the part of the defendant of the extent of services, and for services long prior to the immediate six years before the bringing of this suit, and hence we say to you there is no plea of the statute of limitations." (Third assignment of error.)

. . . . "It is in evidence that these services began about 1855, and, during part of the time, Mr. Golden had a partner, and that when the partnership was dissolved, Mr. Golden, the plaintiff, assumed and took charge of the business, and it was agreed between the partners that any services that were rendered by the firm should belong to Mr. Golden, therefore the suit is rightly brought so far as that is concerned. You will therefore determine, as best you can from the evidence in the case, as to the value of these services." (Fourth assignment of error.)

Defendant's counsel excepted "to the general charge of the court and to the qualifications of the points, and at their request, bill of exceptions sealed." A rule of court provided that exceptions to the charge shall distinctly set out the several matters excepted to—no general exception to the whole charge will be allowed.

Verdict for the plaintiff for $47,092.50, and remittitur filed as before stated, for all in excess of $35,500, and judgment for plaintiff for that sum. To this judgment the present writ of error was taken, the errors assigned being the answer to defendant's points; the omission of the court to answer said points separately, and the portions of the charge above quoted.

After the writ of error was issued the following paper, endorsed, "motion to quash writ of error," was filed in this court:—

"We, James Mosgrove and William Pollock, do hereby certify and make known that neither of us individually, or as administrators of J. E. Brown, deceased, ever employed J. P. Colter, G. C. Orr, and G. A. Jenks, or either of them, as our attorneys in the above stated case; nor did either of us

purchase or sue out the writ of error in this case, or authorize the same to be done on our behalf.     October 31st 1882.

JAMES MOSGROVE,
W. POLLOCK.

*David Barclay,* for said Mosgrove and Pollock, subsequently filed a motion to quash the writ of error, on the ground stated in the above paper; further, because none of the counsel who signed the præcipe for the writ of error were attorneys of record in the court below, except J. P. Colter, who entered his appearance after the judgment was entered, and J. Gilpin, who stated in writing, November 1st 1882, that he signed said præcipe " only upon the request of Mr. Colter and the other gentlemen who represent the widow, child, and grandchild of Mr. Brown, who have taken and now have the entire charge of the case ;" said widow and heirs not having been made parties in the court below, and the judgment not being conclusive as to them.

A reply to the motion to quash was filed on behalf of the widow and heirs, setting forth that the record showed that William Pollock, one of said administrators and defendants below, signed the recognizance for bail in error as administrator ; and that the other administrator, Mr. Mosgrove, had signified his consent to the writ of error, in a letter dated April 19th 1882, to C. T. Neale, Esq., in which he said : " Before I left I sent Wm. Pollock to Mr. Gilpin to have him ask for a new trial or if possible, take an appeal."

*George A. Jenks* (with him *John Gilpin, G. C. Orr, Geo. W. Guthrie,* and *J. P. Colter*), for the plaintiffs in error.—The legal presumption as well as the presumption of fact arising from the numerous receipts in evidence, is that all services were paid for as rendered.   The plaintiff sought to go behind the " receipts in full " and claim generally a gross sum for services as a whole, for twenty-five years.   The court permitted him to do this, or the ground that the case being tried without formal pleadings the defendants could not set up the bar of the statute of limitations.    This was error: Spruce Creek R. R. Co. *v.* Stees, 27 P. F. S. 332; Coulter *v.* Repplier, 3 Har. 208 ; Bricker *v.* Lightner's Ex'rs, 4 Wr. 199.

The court further permitted a recovery by the plaintiff in his own name not only for services rendered by him as an individual but also for alleged services rendered by various firms of which the plaintiff was at different times a member, on the ground that he had acquired the interests of the retiring partners.    This was error : Horbach *v.* Huey, 4 Watts 455.

This court will not encourage stale claims against dead men's

estates, especially when made by a lawyer, for "professional advice and counsel" extending over a lifetime, when there is no proof of contract, nor of a single instance when any particular service was rendered except when it also appears that such service was paid and receipted for in full. There are enough ghouls seeking to fasten claims on the estates of dead men, and it would be lamentable if the courts could be made the instruments of recovery of by lawyers of extravagant claims set up after the death of their clients, springing out of their confidential relations during life.

*John M. Thompson* and *David Barclay* (*Richard H. Johnston* with them), for the defendants in error.—The honesty and equity of this claim was clearly proved and adjudicated, first before the arbitrators chosen by the parties (W. J. Wright, F. P. Wolf, and J. G. D. Findley), and afterwards by the learned judge and the jury in the court below. It is not possible to bring to the notice of this court the numerous and complicated facts which went to convince both those tribunals of the validity of the claim. The administrators themselves and their counsel were so convinced of the justness of the claim, that although nominal plaintiffs in error, they are here against their will, and have moved to quash the writ, as taken in their name without authority, by attorneys representing others, not parties in the court below.

The questions of law attempted to be raised by the assignments of error, 1 to 4 inclusive, cannot be considered, no specific exceptions having been taken in the court below to the portions of the charge therein assigned as error. But if considered, there is no error in them. It is well settled that the technical defence of the statute of limitations cannot be set up unless specially pleaded : Boggs *v.* Bard, 2 Rawle 102 ; Heath *v.* Page, 48 Pa. St. Rep. 130. Administrators are not bound to plead the statute against a debt which they believe to be legally due : Ritter's Appeal, 23 Pa. St. Rep. 95 ; Smith *v.* Porter, 1 Binn. 212 ; Biddle *v.* Moore, 3 Barr 178. After admission of all the evidence, without objection, showing a general confidential employment not affected by the beginning or ending of years, it was too late to ask the court to apply the bar of the statute ; but if this be otherwise, we contend that the statute can have no application to such an employment—it cannot begin to run until the cause of action is complete, which, under the circumstances of this case, was not until the relation between the attorney and the client was dissolved by the death of the client: Marstellar *v.* Marstellar, 93 Pa. St. Rep. 350 ; Lichty *v.* Hugus, 55 Pa. St. Rep. 434 ; Foster *v.* Jack, 4 Watts 338 ; Mygatt *v.* Wilcox, 6 Amer. Rep. 90 (45 N. Y. 306).

[Mosgrove *v.* Golden.]

Mr. Justice TRUNKEY delivered the opinion of the court, December 30th 1882.

One of the members of a partnership to whom the others have transferred their interests in the partnership property and claims, cannot sue and recover a debt which was owing to the firm, in his own name: Horbach *v.* Huey, 4 Watts 455. Therefore, when a person brings suit for the value of his services rendered to the defendant, he cannot join and recover in such suit, a debt owing to a partnership of which he was a member for similar services, although the debt was transferred to him before commencement of the suit.

In this action, E. S. Golden is plaintiff, and the only statement of his claim is, that he seeks " to recover for professional services and counsel rendered by him to James E. Brown about his business generally, and disbursements therein, for a number of years prior to his death." And the answer of the defendants is, that they " are uninformed as to the correctness and legality of such claim and deny the same." In the agreement for entry of the suit the parties stipulated that the " suit shall be deemed to be depending in like manner as if the said defendants had appeared to a summons." The claim was indefinite, stating no amount of demand, nor date of beginning or end of service. It is neither a declaration, nor a statement under the Act of 1806. Prior to the Act of March 14th 1872, P. L. 25, probably the verdict could not have been sustained. That Act provides that no verdict shall be set aside for want of a declaration or plea, but the court may at any time direct the filing of a declaration and the entering of a plea which shall make the pleadings and record conform to what was tried before the jury and found by the verdict. A declaration conforming to what was tried, would show a claim for services rendered the late James E. Brown by E. S. Golden individually, by Golden & Neale, and by Golden & Patton, together, covering a period of twenty-five years. The case must be disposed of as if such declaration had been filed, and the pleas entered under which the defences set up at the trial would have been heard and considered.

After remarking that the plaintiff claimed to recover the value of services for a period of twenty-five years, the court instructed the jury that if he was entitled to recover at all it was for the whole services as a whole, and that the defendants could not take advantage of the statute of limitations because it had not been specially pleaded. Had the principle which determined the case of Horbach *v.* Huey, supra, been heeded, in absence of evidence that Brown had contracted with Golden to pay him the debts owing by Brown to Golden & Neale, and Golden & Patton, the plaintiff would hardly have claimed to recover said debts in this suit. He cannot join debts

which he cannot sue for in his own name with one which he could.

As no declaration had been filed, ground had not been laid for a plea. The record shows no claim for a debt barred by the statute of limitations; hence, there was no reason for specially pleading it. It was well said by the learned judge of the common pleas that "the law aims at the settling of men's disputes unencumbered with technicalities." But if the plaintiff set up a claim for services extending over a quarter of a century, the defendant shall have the benefit of a statute of repose and quiet, to defeat stale claims against dead men's estates as living men could have when they have lost the evidence of settlement or payment. Where parties go to trial without pleadings, this act is not a waiver of a statutory defence to a claim as proved. Such defence is not technical, is not merely formal; it is legally meritorious. Otherwise this old statute ought to be repealed. It was the duty of the court to hear any competent evidence to rebut that adduced by the plaintiff, and to affirm the legal propositions requested by the defendants to which they would have been entitled had the cause been put at issue by proper pleadings. If by reason of surprise the plaintiff was likely to suffer he could have taken a non-suit; and the court has power, when justice demands, to withdraw a juror and continue the cause.

The statute of limitations does not begin to run against the claim of an attorney for professional services so long as the debt which he seeks to recover for his client, remains unpaid: Foster v. Jack, 4 Watts 334. It runs against such claim as soon as the services are finished, and the relation of attorney in a litigated case will not prevent the claim for services generally from being barred by the statute, though it may for services rendered in and during the progress of that particular case. "Services rendered in any stage of the conduct of a single suit may well be regarded as rendered in pursuance of the same contract, but advice or services at different times and respecting various matters cannot." When an attorney advises or renders services respecting some matters of business, it does not prevent the statute from running against his claim for other finished services: Hale v. Ard, 48 Pa. St. 22. The doctrine of that case accords with Lichty v. Hugus, 55 Id. 434, for Hugus' claim was for services in a single suit.

When the firm of Golden & Neale was constituted and the relationship of attorney and client between them and Brown began, Golden had a right of action against Brown for his prior individual services. It is a familiar principle that the statute begins to run when the right of action is complete. That the statute began to run against the individual claim of Golden

when the services of the firm commenced, and that it began to run against a debt owing to Golden & Neale, March 31st 1871, is too clear for doubt. *

For services in a large number of suits, and for some other services, the plaintiff was paid in full. He gave receipts particularly specifying the service, the last bearing date July 9th 1880. In some instances he sent his account with request for immediate settlement, the last is dated June 24th 1878. These receipts tend to show that the parties contemplated prompt payments for any particular service, and should be considered with other evidence respecting the demand in this suit. The plaintiff avers that he "had been the general and legal adviser of Mr. Brown, for over twenty-five years; that his employment was not limited nor affected by lapse of time, nor obstructed by the commencement or ending of years." There was no evidence of an express agreement. Mr. Brown's business was large and varied and intricate, and the plaintiff was his trusted legal adviser and counselor. Although the plaintiff disclaims an implied hiring by the year, his witnesses called to prove the value of his services, estimated that value by the year. It was quite natural they should. When men are employed without an express contract and continue in service for a long time, it is commonly understood that the hiring is by the year, unless the circumstances indicate a less period. None would infer from the fact that an agent, or bookkeeper, or salesman had continued in the service of his employer half a lifetime that he had no right to demand and sue for past service until the end of his employment. In case of such long continued service the statute would bar a claim for all outside six years immediately before commencement of the action, unless there was evidence to take it out of the operation of the statute. Corporations, and many natural persons, employ attorneys to advise and counsel in all their business. For such service the attorney is entitled to payment, when there is no express contract, within a reasonable time; this is implied, and a reasonable time would not exceed a year. The statute bars the claim of an attorney as it does the claims of other persons when his services may be measured in a similar way as the services of others. It does not begin to run against his claim for conducting a suit until the end of his service in that case; nor would it against his claim for other special service until it was finished. And if any other person be employed to do a specific thing and a long time elapses in the doing of it, the statute does not begin to run against his claim until the work is completed. An attorney may recover for advice and counsel rendered to the defendant, upon the implied contract; so may a man who keeps books, superintends a mill, or does other

[Mosgrove *v.* Golden.]

business for another; and there is no reason why one should be excepted out of the operation of the statute by judicial authority, when all alike are within its provisions.

The first, third, and fourth assignments of error are sustained. That portion of the charge which is the subject of the third assignment, undoubtedly was, and ought to have been, understood by the jury as an instruction that the defendants could not have the benefit of the statute of limitations because it had not been pleaded. It follows that the answer to the defendant's fourth, fifth, and sixth points was at once an affirmance of the propositions, and an instruction that they should not be applied in the determination of the case. So far as those points are consistent with the principles hereinbefore stated, they should have been affirmed without such instruction.

The plaintiff, defendant in error, urged that the first four assignments ought not to be considered because an exception to the general charge is not allowed by the rules of court in the county of Armstrong. In fact, the court sealed a bill of exception to the charge, and this places it in the bill of exceptions, and we are bound to consider the alleged errors. It is frequent that judges seal a bill to the whole charge in districts having similar rules, for the judges are generally willing to aid counsel in their efforts to have a review of any supposed error. And if they were not, counsel would soon avail the statute, and bring the whole charge into the record in every case to the end that it may be reviewed without exception being noted or sealed.

James Mosgrove's letter to Neale and William Pollock's entering into the recognizance, evidence that the writ of error was taken out by their authority. They have not discontinued the suit. Nor is their certificate, dated October 31, 1882, " a motion to quash the writ of error;" but it is one of the many things in the proceedings showing the difficulties in their position. On one hand they are bound to faithfully perform their duties as administrators of the estate; on the other, as is manifest, they believe the plaintiff's demand is just. As the widow and legatees or heirs protested against acquiescence in the result of the trial, and urged that a writ of error be purchased, it was at least prudent to comply with their request. A judgment obtained against administrators, in some circumstances, will not protect them in suffering the judgment to stand, and paying it out of moneys of the estate. We are of opinion that there is no cause for quashing the writ.

Judgment reversed, and venire facias de novo awarded.