[No. 2210]

# H. WARREN, RESPONDENT, *v.* GLASGOW EXPLORA-TION COMPANY, LIMITED (A CORPORATION), APPELLANT.

[160 Pac. 793]

1. WORK AND LABOR—PLEADING—PROOF AND VARIANCE.

Under a complaint on *quantum meruit* for services, where a specified contract is proved fixing the price therefor, the stipulated price becomes the *quantum meruit* in the case.

2. LIMITATION OF ACTIONS—SERVICES OF ATTORNEY.

Where, by an attorney's contract, he was entitled to $100 per year for general legal services, he had a cause of action for each year's services so rendered, and recovery by him for more than four years prior to action was barred.

APPEAL from Sixth Judicial District Court, Humboldt County; *Edward A. Ducker,* Judge.

Action by H. Warren against the Glasgow and Western Exploration Company, Limited. From a judgment for plaintiff, defendant appeals. **Modified and affirmed.**

*T. A. Brandon,* for Appellant:

Respondent has tried to avoid the bar of the statute of limitations by suing on a *quantum meruit,* with a continuing contract as a base. The testimony shows that he entered into an express contract, containing a stipulated price for his services each year. He could have sued either on *quantum meruit* or the implied contract, but he is seeking to avoid the bar of the statute of limitations; endeavoring to accomplish by indirection that which he could not accomplish directly. This the law will not permit. (Elliott on Contracts, vol. 3, par. 2657.) All of the cause of action of the respondent arising prior to four years before the commencement of the action is barred. (*Mosgrove* v. *Golden,* 101 Pa. 605.) "Under a general retainer to attend to all of a man's business, without stipulation as to the time and mode of payment, the fee for each service is due as soon as the service is rendered, and the statute of limitations begins to run immediately. (*Jones* v. *Lewis,* 11 Tex. 359.)

Respondent cannot be heard to contend that there was a distinct retainer for each year of his employment, impliedly or otherwise, for his evidence shows that he relies upon a continuing contract, with the further purpose of avoiding the statute of limitations. In other words he was retained for the first year; impliedly, therefore, he was retained for the second year, and so on for each year of his alleged employment, and all his retainers prior to four years before the commencement of the action are barred by the statute of limitations. Respondent's theory of service by retainer for each year will not harmonize with a continuous contract. He cannot recover a series of retaining fees and still maintain that his contract was a continuing one and not barred by the statute of limitations.

*J. A. Langwith,* for Respondent:

This action having been brought under a complaint on *quantum meruit,* we were properly allowed by the trial court to prove a specific contract fixing the price for service. The stipulated price becomes the *quantum meruit* in the case. (*Burgess* v. *Helm,* 24 Nev. 249; *Fells* v. *Vestvali,* 2 Keyes, 152.)

There is a wide difference between a contract from year to year and a yearly compensation on a continuous contract. The evidence shows conclusively that the contract was not intended to last for only one year, but that the officers of the company were fully aware of the continuous nature of the employment, and therefore the statute of limitations did not begin to run until the completion of the services. (*Ah How* v. *Furth,* 13 Wash. 550, 43 Pac. 63; *Morrissey* v. *Faucete,* 68 Pac. 354; *Grisham* v. *Lee,* 61 Kan. 533, 60 Pac. 314; *Crampton* v. *Logan,* 28 Ind. App. 405, 63 N. E. 51; *Graves* v. *Pemberton,* 3 Ind. App. 71, 29 N. E. 177; *Laggart* v. *Levanny,* 1 Ind. App. 339, 27 N. E. 511; *Story* v. *Story,* 1 Ind. App. 284, 27 N. E. 573; *Carter* v. *Carter,* 36 Mich. 207; *Jackson* v. *Mull,* 42 Pac. 603; *Eetal* v. *Warren,* 138 S. W. 694.)

By the Court, NORCROSS, C. J.:

This is an appeal from a judgment and an order denying defendant's motion for a new trial. Plaintiff brought his action upon contract and prayed judgment in the sum of $1,491.66 and costs.

After alleging the corporate capacity of defendant, the complaint alleges:

"That between the 16th day of December, 1898, and the 15th day of November, 1913, the plaintiff has continuously and at all times between said dates rendered services to the defendant, at its instance and request, as state agent, and resident agent upon whom process might be served, for the defendant in and for the State of Nevada, and as attorney for the defendant at its request, in counseling and advising the defendant and in attending in and about the business of the defendant and in prosecuting and defending certain suits for the defendant. That said services are reasonably worth the sum of $100 per year for each and every year between the 16th day of December, 1898, and the 15th day of November, 1913. That the defendant has not paid the same or any part thereof." ·

Defendant's answer, among other alleged defenses, set up the statute of limitations as a bar to plaintiff's claim for compensation for services rendered prior to four years preceding the termination of such services.

By reply to defendant's answer, plaintiff and respondent denied the alleged bar of the statute of limitations, upon the ground that the services rendered were continuous. Judgment was rendered for the full amount prayed for.

Among the findings of the court appear the following:

"That the plaintiff, in the State of Nevada, for the period of fourteen years and eleven months, continuously (which said period began the 16th day of December, 1898, and ended on the 15th day of November, 1913), rendered and performed services for the defendant, at its instance and request, as state agent, and resident agent of a foreign corporation upon whom process may be served

within the State of Nevada, and also as attorney at law
at its instance and request in counseling and advising the
defendant and in attending in and about the business of
the defendant and in prosecuting and defending certain
suits for the defendant. That said services were per-
formed in an uninterrupted and continuous manner; and
were performed under no employment that was for any
definite period. That said services were reasonably worth
the sum of $100 for each and every year embraced in the
period of their performance, as aforesaid; that is, to say,
in the aggregate, the sum of $1,491.66$\frac{2}{1}\frac{3}{0}\frac{}{0}$."

It is contended that the findings, *supra,* are not sup-
ported by the evidence.

Relative to the contract in question, we quote the
following from the testimony of plaintiff and respondent:

"Q. What has been your relations with the defendant?
A. I have been the state agent and attorney for the
defendant.

"Q. By whom were you employed? A. By Otto Stahl-
man.

"Q. Who was Otto Stahlman? A. General manager
for the defendant company.

"Q. When did the employment commence? A. In the
fall of 1898.

"Q. State the facts and circumstances as you remember
them, Mr. Warren, attending the contract, if any, under
which your services were performed. A. Mr. Stahlman
and Mr. Farron came to my office and told me what
they were going to do; that they were going to take
charge of the operations of the Glasgow and Western
Exploration Company and the Adelaide Star Mines Com-
pany. They discussed generally what the operations
would be, stating where the operations were to be carried
on and what property they had acquired; and they asked
me if I wouldn't act locally for them and advise them in
respect to general matters respecting the carrying on of
their business. I asked them who they were acting for,
under what authority. Mr. Stahlman told me that he
was the general manager of both companies. * * *

And that Mr. Farron was the superintendent of mining, and that they were foreign corporations, owned by Scotch and English people. He represented that their operations would be very large and extensive. And they wanted to know what was necessary for such corporations to do in order to engage in business in this state. I advised them what was necessary to do to begin with, and he asked if I wouldn't act for them in small general matters and what it would be worth. We discussed the things to some extent, and I advised them, among other things, that they would have to employ an agent, that the law of this state required them to file certified articles of incorporation in every county in which they were engaged to do business, and required them to retain an agent to whom local process could be made. They asked me if I could act for them as agent, and I told them I could. We discussed then the compensation, and I told them those matters were of small moment, that they would very likely have no suits at all, and finally they suggested themselves $200 a year, if that would be sufficient compensation for acting for them in a general way and for acting as agent, a hundred dollars for each company. I said, 'Yes,' but that I didn't care to act for them in that way, except that I was to have their general business, and we discussed what the general business would be, as to compensation, and finally concluded that I was to be paid for any special work I did, separately; no amount was fixed as to that. * * * Well, they told me that I was to have all the business; that I was to have $200 a year for acting as agent and giving them advice in a general way; that I was to have all their business in this county and any other business, law business, or matters outside of being agent and giving a little advice, I was to have that business. * * * I received from the company in Glasgow, through the mail, certified copies of its articles of incorporation, of both companies, and later, as I state, I filed these articles in the different counties in which the companies were engaged in business, and later on, I won't say whether

it was in the fall of that year or the early part of the next year, I received two appointments as agent, one for each company, in writing, under the signatures of the officers of the company and under the seal of the company, and I filed these certificates of appointment as agent with the secretary of the State of Nevada."

Upon cross-examination plaintiff testified:

"Q. You had a conversation with them there?  A.  Yes.

"Q. In which it was agreed, as you testified, to receive $100 a year.  For what?  A.  As attorney in small matters, trifling things and as state agent.    *    *    *

"Q. Did I understand you to say that you were to be paid in addition?  A.  Yes, sir.

"Q. For any work that you did?  A.  Any special work that I did, I was to be paid for it.

"Q. Then this hundred dollars was simply to act as a retainer?  A.  General retainer, to act as agent.

"Q. How long was that to last?  A.  Until it was stopped.

"Q. Indefinitely, in other words?  A.  Yes, there was no fixed time.    *    *    *

"Q. Did you render any bill for that service?  A.  I don't think so.

"Q. Why not?  A.  Because I felt I had the money coming and that the company would take care of me.

"Q. In other words, you let it run until you got a bill of $1,500 against each of these companies, for which you never presented a bill?  A.  I never presented a bill for acting as state agent."

**1.** The contract proved in this case was for a stipulated price per year for the value of the services to be rendered.  The action, however, is to recover the reasonable value of the services, which is alleged to be the same as the amount shown by the testimony to have been stipulated.  This is immaterial so far as the right to recover is concerned, for, as held in *Burgess* v. *Helm*, 24 Nev. 249, 51 Pac. 1026:

"Under a complaint on a *quantum meruit* for services, where a specified contract is proved, fixing the price for

services, the stiputated price becomes the *quantum meruit* in the case."

**2.** We think the defense of the statute of limitations interposed in this case should have been well taken. By the terms of the contract proven, respondent was entitled to be paid $100 per year for his services. He could have presented a claim at the end of each year, and he had a cause of action for each year's services so rendered. (*Ennis* v. *Pullman Co.*, 165 Ill. 161, 46 N. E. 439; *Mosgrove* v. *Golden*, 101 Pa. 605, 2 R. C. L. 1056.) See, also, *Osborn* v. *Hopkins*, 160 Cal. 501, 117 Pac. 519, Ann. Cas. 1913A, 413, and note.

From the opinion of Magruder, C. J., speaking for the court in *Ennis* v. *Pullman Co.*, *supra,* we quote:

"It seems to be claimed that this is a case of indefinite hiring, and that the statute did not begin to run until the whole service was ended. We cannot concur in this view. Where an attorney is conducting a single suit, it has been held that the statute of limitations cannot commence running until the services contracted for have been performed by the ending of the suit, or by the termination of the retainer in some other mode. (*Walker* v. *Goodrich*, 16 Ill. 341.) But where attorneys are regularly employed at a salary given for advice and legal superintendence and other services rendered from day to day, there is no reason why they should not stand upon the same footing as other salaried employees, so far as the statute of limitations is concerned. (*Mosgrove* v. *Golden*, 101 Pa. 605; *Adams* v. *Fort Plain Bank*, 36 N. Y. 255; *Hale's Exrs.* v. *Ard's Exrs.*, 48 Pa. 22; *Phillips* v. *Broadley*, 11 Jur. 264.)

"Ordinarily when a man is employed under a general agreement, which fixes no term of service, and continues in service a long time, the hiring will be treated as a hiring by the year. (*Mosgrove* v. *Golden, supra; Davis* v. *Gorton*, 16 N. Y. 255, 69 Am. Dec. 694.) In case, however, of such long continued employment, the statute will ordinarily bar a claim for all outside of the five years immediately before the commencement of the action,

unless there is evidence to take it out of the operation of the statute. (*Mosgrove* v. *Golden, supra*; *Thompson* v. *Reed, Admx.*, 48 Ill. 118; *Freeman* v. *Freeman*, 65 Ill. 106.)"

A number of other questions have been raised in the assignments of error and discussed in the briefs, but we think they are not of sufficient merit to require consideration here.

The judgment will be modified by reducing the same to the sum of $400, and, as so modified, the judgment is affirmed.