## Schoch's Administrator *versus* Garrett.

1. The relationship between a father-in-law and a son-in-law is not of itself sufficient to overcome the presumption of a promise to pay for services in nursing and taking care of the father-in-law by his daughter, the wife of the son-in-law.

2. On the death of his wife, a father asked his daughter, the wife of the plaintiff, to keep his house, take care of him, &c., saying she should be well paid. The daughter kept the house for eleven years, until the father's death. In an action against his administrator by the husband for the wife's services, the court charged, that if the jury found it to be an entire contract not completed till the father's death, the statute of limitation would not bar any part of the claim till six years after the death. *Held,* to be correct.

May 17th 1871.    Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lebanon county :* No. 5, to May Term 1871.

This was an action of assumpsit brought March 27th 1869, by Frederick Garrett against John Schoch, administrator, &c., of Peter Shoch, deceased, for services rendered by the wife of the plaintiff to the decedent in his lifetime.

The plaintiff was the husband of a daughter of the decedent; the wife of the decedent died in April 1855; and, about that time the plaintiff and his family, at the request of the decedent, as was alleged, moved into his house. The wife attended to the decedent and nursed him from that time until his death, which occurred in April 1866, he being then about eighty-five years old.

For the plaintiff the evidence was that the decedent had been in a bad state of health for a long time, with a very offensive disease, on account of which he required more than ordinary attention. The disease increased as he grew older and he required more attention; that he had been faithfully and carefully attended and nursed by the plaintiff's wife.

Daniel Gese testified that the decedent said that Mrs. Garrett would never be paid for the trouble she had with him.

H. Eberly testified that he heard the decedent say in the presence of one of his sons that he would make a will and give a

farm to Mrs. Garrett, but she did not want it; that she would never get paid for the trouble she had with him; Mrs. Garrett asked witness what her father had said, and when told, said she did not want a farm, she wanted to be paid for her trouble.

Sarah Shultz testified that once, after Mrs. Garrett had rendered some attention to her father, required by the offensiveness of his disease, he said to her, "I will pay you for this."

Elizabeth Zeller, a daughter of the plaintiff and granddaughter of decedent, testified: that her grandfather, on the day his wife died, asked his daughters to keep house for him; he asked the others before Mrs. Garrett, and said "whichever one did it should be well paid for it," and then Mrs. Garrett promised; the witness was about eleven years old then. About a year before he died he told Mrs. Garrett "to get some one to do the outside work, that for the few days he had to live she might stay with him." Mrs. Garrett did hire help. The decedent wanted to give Mrs. Garrett a farm by will; she said "she did not want more than was right, he should pay her, the rest divided equally; he said she would never be paid for the trouble she had with him; the rest never came and looked after him; mother had to do everything."

Sarah Lebo testified: "I heard him say, if Mrs. Garrett would wait on him well, she should be well satisfied."

The plaintiff proposed to ask witness, if any of the defendant's children came there or gave him any attention. This for the purpose of showing that Mrs. Garrett bestowed on him all the care he needed. The evidence was objected to and admitted "for the purpose offered, not for any other."

Plaintiff also proposed to prove by witness that the decedent complained that his sons did not come oftener to visit him, and gave him no attention. This was objected to by the defendant, but received as an admission of the decedent, to have no other effect than if he had said, "none but his daughter gave him any attention." Several bills of exception were sealed to the admission of these offers.

The witness answered that the other children seldom came there, and that the decedent often said that his sons gave him no attention.

Catharine Matthews, a daughter of the decedent, testified, that her father asked her to keep house for him; she declined, he asked another sister who also declined.

The plaintiff called Amanda Pearson, and proposed to put a case hypothetically as near what the evidence made out in substance as practicable, and to ask the opinion of the witness as to what it would be worth per month or week to take care of the person so situated, this witness not having heard the evidence of the other witnesses. This was objected to by defendant's counsel.

The court said: "We know of no other way of enlightening the jury as to the value of the services in such cases, and therefore,

19 P. F. Smith—10

[Schoch *v.* Garrett.]

like all other actions of assumpsit for services rendered, an opinion may be given of the value of the services."

The question was allowed to be put, and bill of exceptions was sealed.

The witness said she would not do it for $50 a week: and then testified as to the value of such services. Andrew Strickler was called, and it was proposed to ask him what was usually paid for like services to persons in similar cases.

The witness answered, "1 don't know what is the ordinary pay for such services; I nursed one man; he was feeble from old age; could not help himself; time not so long; much trouble; three months, not quite; had to wash him all over when I physicked him." The evidence was objected to, and received, because it is conceded there is no custom as to the wages to be paid in such cases in this part of the country; received for what it is worth and a bill of exceptions sealed.

The defendant gave evidence that the plaintiff occupied the house and farm for eleven years; during the first six years he followed his trade as a blacksmith and his family were supported from the farm; for the remaining five years he farmed to the shares, and used the products of the farm for his family and stock, before dividing.

The defendant called William Zimmerman, who testified: "My mother was helpless for about a year; Amanda Pearson waited on her." It was proposed to show by witness that she got but seven dollars per month for her wages, for the purpose of contradicting the witness and also to show what the services were really worth. This was objected to by plaintiff.

Court: "It does not contradict the witness, as she was not asked a word on the subject, nor did she refer to it in any way. It is no proof of the value of the services as she might not have been half paid." The evidence was overruled and a bill of exceptions sealed.

A large amount of testimony was heard on both sides.

The defendant requested the court to charge:—

4. That declarations made by the intestate, as testified to by Daniel Geise, that she, Mrs. Garrett, would not be paid for trouble she had with him; by Harrison Eberly, that she would not be paid for the trouble she had with him; by Sarah Shultz, that I will pay you; by Elizabeth Zeller, that my mother will never be paid for trouble she had with him; and by Sarah Lebo, that if she would attend to him well, she should be well paid for it, are not sufficient, taken singly or together to establish an express contract; and that the plaintiff has therefore nothing to rely upon, but an implied contract, and which contract is rebutted and overthrown by the relations subsisting between the parties (the plaintiff being a son-in-law of defendant's intestate), and the facts as testified to by Harrison Eberly, John Stupp and Emanuel Stoever, showing that the

[Schoch *v.* Garrett.]

plaintiff lived on farm of said intestate for eight years, and that he and his family together with those employed by him in carrying on said farm, were supported and maintained out of the products and income thereof, and the plaintiff cannot recover.'

5. That even if the declaration made by the intestate, as testified to by Sarah Lebo, that if she, Mrs. Garrett, attended to him well, she should be well paid for it, is sufficient to establish an express contract, it relates to the future alone, and the plaintiff can recover only for services rendered thereafter.

The court answered the points as follows :—

"4. A son-in-law can primâ facie recover for the maintenance of his father-in-law, taking care of and nursing him. But that may be rebutted by showing the circumstances of his going there and living with his family off the farm. That again may be repelled by the frequent declarations of Peter Schoch, that his daughter, Mrs. Garrett, should be well paid for her services in nursing and taking care of him in sickness.

"5. The law would be so if it stood on that alone. But as the son-in-law was not bound to render the services to the deceased without compensation ; it is a circumstance to be taken in connection with the proof of others that Garrett was not to render the services in consideration of the advantages of living with Schoch and using his farm."

The court further charged :— * * *

" It has been decided in Pennsylvania that where a man goes to live with his son-in-law, the law does not imply that he is to remain there gratuitously, as in the case of father and son ; and by analogy where the son-in-law renders services to the father-in-law, there is no legal implication that it is gratuitous; on the contrary, in the absence of any circumstances, it would be presumed that he is to receive compensation. In the present case the fact that the plaintiff with his whole family moved into the house of Peter Schoch about the year 1855, immediately after the death of Schoch's wife, and remained there during his whole lifetime, Garrett receiving his support and that of his family mainly from the farm of Mr. Schoch, under a contract to that effect, is relied on to repel the presumption that Garrett was to have compensation for nursing, waiting upon and taking care of the decedent. The jury must judge whether under these circumstances it was understood that Garrett was to be compensated for his trouble with Schoch in addition to the advantages enumerated, or was to perform the labor, or bestow the attention gratuitously, and was to have nothing more than those advantages therefor. If such was the original contract or understanding there can be no compensation, unless there was a new bargain. You will carefully consider all that was said from time to time, as proved by the different witnesses, not merely to establish a contract from that time,

[Schoch *v.* Garrett.]

but also to rebut any presumption arising from the method of living, and manner of coming together, as the law would imply a contract to pay unless repelled by circumstances. [It appears to be conceded in the argument, and is perhaps satisfactorily proved, that Mr. Schoch invited and urged his daughter and son-in-law to come and live with and keep house for him, the other daughters and sons having declined to come. Was there a contract then made for payment? The only witness who speaks of it is Elizabeth Zeller, a daughter of the plaintiff, who says that when her grandfather asked her mother to come and keep house for him he said ' she should be well paid.' ' He asked the other girls first, said whichever one did it should be well paid for it, and then mother promised.' She states that this was on the day her grandmother died. Can you rely upon this as sufficient evidence of a contract? You will bear in mind that this lady was then a young girl only about eleven years old, a daughter of the plaintiff. Nothing is said against her general veracity, but persons of that age have but little judgment, or knowledge of dealings, may readily misunderstand or misremember. Her correctness on this subject is submitted to your careful consideration. It is an important point in the case, as on it the plaintiff relies to show a bargain for payment before he entered on the duty. He also contends that the bargain being so made and carried into full effect on his part by remaining there and keeping house for Schoch during his whole life, it was an entire contract, not completed on part of the plaintiff until the death of the intestate, and therefore the statute of limitation does not bar any part of that claim. Such, we say, is the legal effect of an entire contract. If it is of a character requiring many years to consummate, it is not barred until six years after completion. As if a man should undertake to clear off a large body of land for another under a contract to be paid on completion of the work, and he necessarily spent seven or eight years in its performance, the law would not bar his claim, until six years after it was finished. In like manner if a contract be made to keep house during the lifetime of another, the bargain would not be completed until his death, whilst if compensation was claimed on an implied contract for work and services, all of older date than six years would be barred. The jury must judge whether the parties meant in this case that the housekeeping should continue during life.'] That you must collect from all of their acts and declarations; leaving out of view what was said as to an original contract, does the evidence of the different witnesses repel the presumption attempted to be raised; that there was to be no other compensation to Garrett than the advantage to himself and family of living on and drawing their subsistence from Schoch's property. * * * It is very possible that the advantages derived by Mr. Garrett from the use of the farm, the dwelling and the support of

his family and laborers, would compensate him to a great extent, if not entirely down to that period; but that and the extent of the services and the value thereof are solely for the jury." * * *

The verdict was for the plaintiff for $3195.83.

The defendant removed the case to the Supreme Court and there assigned for error : —

1–5. The rulings of the court as to the evidence.

6. The part of the charge in brackets.

7–8. The answers to the points.

J. Benson and A. R. Boughter, for plaintiff in error, cited Smith v. Milligan, 7 Wright 107; Amey's Appeal, 13 Id. 126.

W. M. Derr & Son, for defendant in error, cited Kidder v. Boom Co., 12 Harris 193; Gordner v. Heffley, 13 Wright 163; Smith v. Milligan, supra; Lynn v. Lynn, 5 Casey 369; Neel v. Neel, 9 P. F. Smith 347.

The opinion of the court was delivered, October 9th 1871, by

WILLIAMS, J.—The plaintiff's wife was the daughter of Peter Schoch, deceased, and this action was brought against the administrator of his estate to recover for the wife's services in nursing and taking care of her father in his sickness, and keeping house for him from the spring of 1855 until his death in April 1866.

The jury have found that there was an express contract between the parties for the payment of the services rendered by the wife, and that it was entire. If, then, the case was submitted to the jury with proper instructions, and upon sufficient evidence, there was no error in the charge. The relationship between the parties was not of itself sufficient to overcome the legal presumption of a promise to pay what the services were reasonably worth; Amey's Appeal, 13 Wright 126; and the facts in aid of the relationship, which were relied on to rebut the presumption, were fairly submitted to the jury. The court said: " It has been decided in Pennsylvania that where a man goes to live with his son-in-law the law does not imply that he is to remain there gratuitously, as in the case of father and son: Smith v. Milligan, 7 Wright 107 ; and by analogy, where the son-in-law renders services to the father-in-law, there is no legal implication that it is gratuitous ; on the contrary, in the absence of any circumstances, it would be presumed that he is to receive compensation. In the present case the fact that the plaintiff, with his whole family, moved into the house of Peter Schoch about the year 1855, immediately after the death of Schoch's wife, and remained there during his whole lifetime, receiving his support and that of his family mainly from the farm of Mr. Schoch, under a contract to that effect, is relied on to repel the presumption that he was to have compensation for nursing,

[Schoch *v.* Garrett.]

waiting upon and taking care of the decedent. The jury must judge whether under these circumstances it was understood that Garrett was to be compensated for his trouble with Schoch, in addition to the advantages enumerated, or was to perform the labor, or bestow the attention gratuitously, and was to have nothing more than those advantages therefor. If such was the original contract or understanding, there can be no compensation unless there was a new bargain."

With the same fairness the court submitted to the jury the question whether, or not, there was an express contract between the parties for the payment of the services. The court said : " The only witness who speaks of it is Elizabeth Zeller, a daughter of the plaintiff, who says that when her grandfather asked her mother to come and keep house for him, he said, ' *she should be well paid.* He asked the other girls first; said whichever one did it should be well paid for it, and then mother promised.' She states that this was on the day her grandmother died. Can you rely upon this as sufficient evidence of a contract ? You will bear in mind that this lady was then a young girl, only about eleven years old, a daughter of the plaintiff. Nothing is said against her general veracity ; but persons of that age have but little judgment, or knowledge of dealings—may readily misunderstand or misremember. Her correctness is submitted to your careful consideration. It is an important point in the case, as on it the plaintiff relies to show a bargain for payment before he entered on the duty." We see nothing in these instructions of which the plaintiff in error has any reason to complain. If the testimony of the witness was sufficient to establish an express contract, if believed, its credibility was left to the jury with proper cautions.

And so, if the jury should find that there was an express contract, the court fairly left it to them to determine from all the evidence whether the contract was entire or not. Nor were the decedent's declarations, as recited in the defendant's 4th and 5th points, the only evidence of the entirety of the contract. Besides these declarations, the testimony of Elizabeth Zeller, already referred to, which need not be repeated here, has a direct bearing on the question. If the jury were satisfied from her testimony that there was an express contract for the payment of the services, could they have any doubt it was understood and intended to be entire, and that it was to continue until it was dissolved by the decedent's death ? The court rightly instructed the jury that if they found the contract was entire, then the Statute of Limitations did not form any bar to the plaintiff's claim.

Nor has the plaintiff any reason to complain of the instructions of the court as to the measure of compensation to which he was entitled, for the services rendered by his wife ; nor of the manner in which the question was submitted to the jury. Whether the

[Schoch *v.* Garrett.]

compensation should be limited and restricted to the support of the plaintiff and his family, or whether it should exceed the support drawn from the decedent's farm, was left to the determination of the jury, under all the evidence in the cause, with the instruction, that if it was understood between the parties, that there was to be no compensation beyond the advantages derived from the farm, the jury could allow nothing, and their verdict must be in favor of the defendant.

From what we have already said, it is manifest that the evidence given by the plaintiff, was sufficient to justify the court in submitting to the jury the questions: whether there was an express contract for the payment of the services rendered by the plaintiff's wife; whether it was understood and intended to be a continuing contract, dissolvable only by the decedent's death; and whether the compensation was limited by, or was to exceed the support derived from the decedent's farm? If the wife was not to receive extra compensation for the very disagreeable services she performed for the decedent in his sickness, as the plaintiff in error contends, what mean his repeated declarations and assurances that he "would pay her for this"—that "she should be well satisfied," &c.? If the plaintiff was to receive only a living for himself and family, then the obligation to make compensation for the wife's services was discharged as soon as it was incurred, and her services were paid for as soon as they were rendered.

There was no error in admitting the testimony embraced in the 1st, 2d, 3d and 4th bills of exception, for the purposes for which it was received; and we discover no such error in rejecting the offer contained in the 5th bill of exception as calls for a reversal of the judgment. The case was carefully tried by the learned judge who presided at the trial, and for the reasons given the judgment must be affirmed.

Judgment affirmed.