## J. W. JOHNSTON v. J. H. McCAIN, EXR.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY.

Argued October 13, 1891—Decided November 9, 1891.

1. When an attorney, employed to take possession of a number of properties, to rent them until sold, to make sale of them and to collect all rents and purchase money, paying taxes and expenses out of the moneys so received, dies before completing his engagement, the statute of limitations runs against his liability to account only from his death.
2. In an action of account-render, by the principal against the executor of the attorney, then deceased, a statement of the attorney's accounts relating to the business, in his own handwriting, is admissible for the plaintiff; and it is unnecessary that it be shown to have been communicated by the attorney to the plaintiff or his agent.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 217 October Term 1891, Sup. Ct.; court below, No. 338 March Term 1888, C. P.

On February 24, 1888, J. W. Johnston brought account-render against J. H. McCain, executor of John Gilpin, deceased. The defendant pleaded, inter alia, the statute of limitations.

At the trial on April 15, 1891, before WICKHAM, P. J. 36th district, the following facts were shown on the part of the plaintiff:

On June 1, 1866, ex-Governor William F. Johnston wrote to John Gilpin, a practicing attorney at law at Kittanning, Pa., informing him that the writer found himself in prospect of pecuniary trouble, and wished to secure certain private debts so far as possible; to which end he enclosed two judgment notes, one in favor of John W. Johnston for seven thousand dollars,

due for borrowed money, and the other for five thousand dollars, payable to Mr. Gilpin, the latter to be held to secure, first, any balance that might be due to Mr. Gilpin on settlement of accounts, and, second, certain sums specified in the letter as due to certain other persons respectively. The letter gave instructions, further, to enter up the notes on June 11th, unless before that date instructions to the contrary should be received.

On June 11th, 1866, Mr. Gilpin entered up the notes in accordance with said directions. At the time of their entry, William F. Johnston had title to seven tracts of land in Armstrong county, some of which he had previously sold upon articles of agreement, portions of the purchase money thereof still remaining unpaid. In 1868, an execution was issued upon the judgment in favor of John W. Johnston, under which five of those tracts were sold by the sheriff to J. W. Johnston, on February 29, 1868, for prices aggregating five thousand dollars. A sixth tract was sold under further execution process, in 1870, to B. Nulton, who afterwards conveyed it to J. W. Johnston. The seventh tract did not appear to have been sold by the sheriff. Prior to the entry of the judgments, that tract had been sold by W. F. Johnston to H. Vastbinder, by articles, and a large amount of the purchase money remained unpaid.

On June 12, 1868, J. W. Johnston executed a letter of attorney to John Gilpin, reciting the sheriff's sale of February 29, 1868, and the purchase by said Johnston of the five tracts aforesaid at said sale; reciting that some of said tracts had been sold upon contracts by W. F. Johnston, and that the purchasers under said contracts had made divers payments to W. F. Johnston on account of the purchase money, prior to said sheriff's sales; ratifying all said contracts and all such payments thereon; appointing Gilpin as attorney in fact of J. W. Johnston to take possession of such of said five tracts as were not so sold by W. F. Johnston; to make sale and conveyance thereof, and until sale to rent the same; to collect and receive all sums of money due or to become due upon the aforesaid contracts made by said W. F. Johnston, and upon any sales made by said attorney; and authorizing and directing said attorney to disburse and distribute all moneys collected by him as follows: (1) to pay all taxes, costs, expenses, etc., and (2) to distribute the balance among the persons named as plaintiffs or cestuis que trust in

Statement of Facts.

the two judgments above mentioned, pro rata according to their respective interests in said judgments.

Gilpin at once entered upon the discharge of his duties as attorney of J. W. Johnston under said letter of attorney. He sold some of the tracts, rented others, collected purchase money and rents, paid costs and charges, and at different times remitted money to Mr. Johnston. At the time of his death, November 3, 1883, one of the tracts embraced in the letter of attorney remained unsold. The others had all been sold, and on some of them he had collected all the consideration. He had also made sale of the Nulton tract, and received the purchase money. The last money shown to have been received by Gilpin was collected in November, 1881.

Testimony for the plaintiff tended to show that, a short time before his death, Gilpin stated to J. S. Ferguson that he had a small sum of money in his hands undistributed, in connection with the transaction respecting the J. W. Johnston property, and that in February, 1882, and again some time after April, 1883, he stated to W. D. Patton, the counsel of J. W. Johnston, " that there were some things back he owed J. W. Johnston that he said he would settle." The plaintiff put in evidence a statement of account in the handwriting of John Gilpin, shown to have been in the possession of J. W. Johnston's counsel in Westmoreland county, in 1882 or 1883, and to have been taken by the witness Patton to Mr. Gilpin's office, on the occasion of having an interview with him about making a final settlement. This paper was in the following form:

JOHN GILPIN, IN ACC'T WITH CREDITORS OF WM. F. JOHNSTON.
1868.
May 29, To amt. of bids at sh'ffs sale and by land
            bid in,      .      .      .      .      .      . 5,000      5,000
            By costs paid Sheriff Reed,      .      .      .      .           109 60
June 8, By cash paid county Treas. for taxes,      .      .           150 85
            To cash rec'd on Kiskadden article,      .      100

        *        *        *        *        *        *        *        *

1882.
Feb'y   By Dividends,      .      .      .      .                         3,531 39
            Div. due John W. Johnston,      .      . 1,690 50
            By ck. to W. D. Patton,            1,000
            By costs pd Shff. Henry,            93 60  Ex D '81
            By ck to W. D. Patton
                25 Feb. '82,                      596 90

Testimony for the plaintiff tended to show that Gilpin had received on the purchase money of the various tracts of land, larger sums than were accounted for in the foregoing statement.

The plaintiff having rested his case, the defendant's counsel, offering no evidence, moved for a nonsuit.

By the court: [To counsel, after argument on sufficiency of plaintiff's evidence had closed :] " A small balance " is a very indefinite term. It might mean a cent or a thousand dollars ; and of course I need not remind you that the Supreme Court require very definite acknowledgments of indebtedness in a case like this.

The only evidence tending to save the plaintiff's claim from the operation of the statute of limitations that is worthy of consideration, is to be found in this statement written on pink paper, and offered in evidence, which it is conceded is in the handwriting of Gilpin. It has not been shown that John Gilpin ever furnished this either to the plaintiff or his attorney. For all we know in this case, it may have been a mere memorandum made out by him for his own information. If it had been proved that it was given by Gilpin to Mr. Johnston, or to some one authorized to act as his agent or attorney, then we would be called upon to pass upon the effect of its contents ; but, as it is, it is hardly worth while to determine its effect, even if it were proved clearly to have been written by Mr. Gilpin ; as to that, however, I suppose there is no controversy. If it were established that he had authorized the delivery of this paper, or had delivered it himself to Mr. Johnston's agent, we would be called upon to determine the effect of the writing ; as it is, I do not see that we are.

It must be confessed that, taking the statement as it stands, even if it were shown that it had been handed by the plaintiff to the attorney, it would not be sufficient to take the case out of the statute. Gentlemen of the jury, [I see no other course to pursue than to direct you to find that the defendant is not liable to account to the plaintiff in this action.] [1]

—The jury thereupon rendered a verdict finding that the defendant was " not liable to account to the plaintiff in this action." A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal assigning for error :

Opinion of the Court.

1. The part of the charge embraced in [ ] [1]

*Mr. W. D. Patton* and *Mr. Ross Reynolds*, for the appellant.

Counsel cited: Mosgrove v. Golden, 101 Pa. 614; McCoon v. Galbraith, 29 Pa. 293; Schoch v. Garrett, 69 Pa. 144; Everhart's App., 106 Pa. 349; Foster v. Jack, 4 W. 340; Campbell v. Boggs, 48 Pa. 524; Fox v. Cash, 11 Pa. 207; Barclay's App., 64 Pa. 69; Trickett on Lim., §§ 197, 257; Morgan v. Tener, 83 Pa. 305.

*Mr. M. F. Leason*, for the appellee.

OPINION, MR. JUSTICE GREEN:

We think the learned court below adopted an inadequate view of the relation between Gilpin and Johnston, and was thus misled into an erroneous application of the statute of limitations. The relation assumed a very definite shape when, in June, 1868, Johnston executed and delivered an elaborate and carefully drawn letter of attorney to Gilpin, which was undoubtedly accepted and acted upon by Gilpin for a number of years afterwards. Indeed, there is no proof that the relation thus established was terminated at the time of Gilpin's death, in 1883.

The relation of attorney and client commenced when, on the eleventh day of June, 1866, Gilpin entered up a judgment for Johnston against William F. Johnston for seven thousand dollars. On that judgment he issued execution to March term 1868, and levied on five tracts of land in Armstrong county, all of which were sold by the sheriff to John W. Johnston at prices the aggregate of which was five thousand dollars. On the eleventh of June, 1868, Johnston executed and delivered to Gilpin a letter of attorney, wherein, after reciting the entering of the judgment and issue of execution, and sale by the sheriff to Johnston of the said five tracts of land, and the conveyance of the tracts to him by the sheriff, the letter of attorney further recited that contracts of sale for some of the tracts had been made by the former owner, William F. Johnston, and that portions of the purchase money had been paid to him. The letter of attorney then declared that John W. Johnston ratified and confirmed the said contracts, and the payments that had been

Opinion of the Court.

made under them, and next appointed John Gilpin his attorney to enter into possession of such of the tracts as were not sold by W. F. Johnston prior to the sheriff's sales, and to grant, bargain, and sell the same, or any part thereof, at such price and on such terms as he should think proper; and until the sales, to rent the same for such rent as he might be able to obtain, and to ask, demand, and receive all such sums of money as may be due, or may become due, upon any of the contracts made by W. F. Johnston, and also to receive any sums of money which may become due upon any sales made by Gilpin as attorney for J. W. Johnston; and to make, execute, and deliver all deeds and conveyances in the name of J. W. Johnston for lands sold by Gilpin as attorney, with full power and authority to do all acts which could be done by J. W. Johnston. The principal further directed his attorney to disburse, distribute, and pay over all moneys which from time to time he might receive from said lands, or on account of any contracts relating thereto, in manner following : " First, to pay all taxes, costs, surveyor's charges, officer's costs, and all charges incurred, or which from time to time may be incurred, in taking care of, conveying, protecting, or selling said lands, or in collecting any of the purchase money or proceeds of or from the same ; and, second, to pay over and distribute any balance remaining, or which may remain, after paying said expenses, to and among the persons, or their respective representatives, named as plaintiffs or cestuis que trust in the two causes or judgments hereinbefore mentioned, such distribution to be made among said plaintiffs or cestuis que trust or their respective representatives, pro rata and in proportion to the interest or portion or amount of said judgments owned or held by or for them, respectively."

On the trial, it was proved that Gilpin had sold at various times some of the tracts of land mentioned in the letter of attorney, and had collected sums of money which were paid to him on account of such sales; also, that he had collected other sums on account of contracts which had been made by William F. Johnston, and ratified by John W. Johnston. An account was given in evidence made out by Gilpin, in his own handwriting, and entitled " John Gilpin, in acc't with creditors of Wm. F. Johnston ; " and it contained entries beginning May 29, 1868, and ending February, 1882, the very last item

being, check to W. D. Patton, 25th February, 1882, $596.90. In this account, Gilpin charged himself with items of money received from parties who had bought tracts from either W. F. Johnston, or from Gilpin as attorney of John W. Johnston. They were in various amounts, received from different persons, and at various times, between May 29, 1868, and November, 1881. He also took credit for a number of items of costs, taxes, surveyor's charges, expenses, and commissions to himself, and also for a few sums paid to John W. Johnston, and called dividends. The first of these dividend payments was entered as having been paid to J. W. Johnston in April, 1871, and the last in February, 1882, $1,690.50. The account was never closed, but remained open on both sides at the time of Gilpin's death. The items on neither side were footed up. This statement or account was admitted in evidence, but the court below, saying that it was not proved that Gilpin furnished it to Johnston or his attorney, and, even if it had been proved to have been delivered by Gilpin to Johnston or his attorney, it would not be sufficient to take the case out of the statute of limitations, directed the jury to find that the defendant is not liable to account to the plaintiff in this action.

This ruling entirely overlooked the fact of the relation between the parties. It is beyond question that Gilpin was acting throughout as attorney at law and attorney in fact for Johnston. As attorney at law, he entered up the seven thousand dollar judgment against W. F. Johnston in favor of J. W. Johnston. Nearly two years later he issued execution upon it, and sold five tracts of land, which he bought in for his client for five thousand dollars. He then accepted a letter of attorney from his client, authorizing him to take possession of the lands, to sell them, to rent them in the meantime, to collect the rent, purchase money, and the moneys due on contracts which had been made by W. F. Johnston and ratified by J. W. Johnston; to pay all costs, charges, expenses, and taxes out of the proceeds, and finally to make distribution in a mode expressed in the letter of attorney. No distinction was made between Gilpin's duties as attorney at law and attorney in fact, and in point of fact his duties partook of the nature of both. It is not necessary to consider the subject of any such distinction, because the rules as to the application of the statute of

limitations are the same in both. It is sufficient to say, so far as the admissibility of the account is concerned, that it was in Gilpin's own handwriting, and therefore was evidence against him. The entries themselves manifestly related to the properties described in the letter of attorney, and whether they did or not was for the jury, and not for the court. The account on its face was not closed, and it did not embrace all the properties which Gilpin was to sell. Whether he had sold them all, and had not accounted for all the proceeds, or whether he had not completed the sales, it was an open account, not settled, and in either event the questions arising were for the jury to determine, and not for the court. Being an open and unsettled account of unfinished business between an attorney in fact or at law and the principal or client, the statute did not run.

In McCoon v. Galbraith, 29 Pa. 293, we held that for partial collections made by an attorney, and communicated to his client, the statute would run from the time of notice ; but without notice, the statute would not begin to run until the case was terminated, or until the termination of the relation of attorney and client in the particular case. In Campbell v. Boggs, 48 Pa. 524, WOODWARD J., in delivering the opinion of the court, said : " I confess I see no adequate ground for a distinction between attorneys in fact and attorneys at law. Diligence and skill in the collection, and promptness and fidelity in the paying over moneys, is required of both. It is reasonable, therefore, that they should have the same measure of protection from the statute of limitations. . . . . Where the professional relation involves a series of acts and duties, an attorney is not suable until the relation is dissolved." In Foster v. Jack, 4 W. 334, GIBSON, C. J., discussing the question as to when the statute commenced to run against the claim of an attorney at law for professional services against his client, said : " When, then, shall his action accrue or the statute run ? Not before demand made or 'the professional relation be dissolved." In Mosgrove v. Golden, 101 Pa. 605, we said : " The statute bars the claim of an attorney as it does the claims of other persons, when his services may be measured in a similar way as the services of others. It does not begin to run against his claim for conducting a suit until the end of his service in that case, nor would it against his claim for any other special service

until it was finished; and if any other person be employed to do a specific thing, and a long time elapses in the doing of it, the statute does not begin to run against his claim until the work is completed." In the case of Schoch v. Garrett, 69 Pa. 144, we held that a claim of a daughter against her father's estate for eleven years' services, under an express contract for compensation to continue until his death, was not barred until six years after her father's death, on the ground that the contract was entire, and the statute would not begin to run until its completion.

Upon the authority of any or all the foregoing cases, it seems quite plain that the statute would not be a bar against the plaintiff in the present action, upon the testimony as it was developed on the trial. Gilpin was both attorney at law and in fact for Johnston in the service which he undertook. By the very terms of the letter of attorney under which he acted, he was to take possession of the whole five tracts of land in question; he was to sell them all, in such way and upon such terms as he saw fit. In the meantime, and before sale, he was to rent them, and collect the rents; he was to collect all the purchase money of all the sales, and also the balance of purchase money due under previous contracts of sale made by W. F. Johnston. He was also to pay all costs, taxes, expenses, and charges; and, finally, he was to make distribution of the remaining proceeds to and among certain persons enumerated, and in certain proportions mentioned. By the very necessity of the case, the service would be, as it was, continuous, protracted, complicated, involving numerous items and the absolute necessity of an account, and the final act of distribution could not be performed until all the properties were sold, and all the moneys collected. That time had not arrived when John Gilpin died. His death terminated the relation, and in four years and three months from that time the present action was brought. It was within the statutory period, under all the decisions; and therefore, the court below was in error in the instruction to the jury to find for the defendant.

Judgment reversed, and venire de novo awarded.