# TAMNEY *v.* SCHEELINE BANKING & TRUST CO.

No. 2844

September 5, 1930.                    290 P. 1027.

*James T. Boyd,* for Appellant:

*Walter M. Kennedy,* for Respondent:

## OPINION

By the Court, Ducker, C. J.:

This action was brought to recover a commission alleged to be due on account of services rendered in effecting a sale of mining property. The parties will be referred to as designated in the lower court. Plaintiff sued for the sum of $2,250 and recovered judgment in the sum of $1,000. The defendant has appealed from the judgment and order denying its motion for a new trial.

The complaint alleges that, on or about the month of March, 1927, the parties entered into an oral agreement by the terms of which the plaintiff was employed as a broker to find a purchaser for certain mining property situated at Nightingale, Pershing County, Nevada, in which it was agreed that in the event the plaintiff found such purchaser the defendant would pay him for such services an amount equal to 10 per cent of the sale price received. It is alleged that on or about the 25th of November, 1927, plaintiff found a purchaser for the property, and the defendant sold said property to this purchaser for the sum of $22,500. As a second cause of action it is alleged that at the special instance and request of defendant, the plaintiff performed services as a broker for the defendant in finding a purchaser for said mining property, and that the reasonable value of said services is the sum of $2,500. These allegations are denied in the answer. The case was tried before

the court sitting without a jury. The following facts are undisputed:

For about two years prior to the trial of this action, on April 6, 1928, W. A. Shockley had been the receiver of the Pacific Smelting & Mines Company, and was also vice president and general manager of the defendant bank. During the receivership the defendant had loaned the receiver $5,000 on receiver's certificates, had taken by assignment a number of labor claims against the insolvent company, and had made advances for taxes and care of the property amounting in all to the sum of $12,500. On September 4, 1926, the receiver sold the real property in his hands to the defendant for $100, and the personal property to one R. A. McGuire for $100. There was then an outstanding indebtedness against said insolvent company in the amount of $250,000, represented by bonds held by persons residing in Honolulu, which bonds were secured by a trust deed of said property. Thereafter the defendant purchased the property at a sheriff's sale on the foreclosure of said trust deed. In the meantime the plaintiff had interested one John G. Clark, president and general manager of the Tungsten Production Company, Inc., of Colorado, in the property, and it was subsequently sold to this company by the defendant for the sum of $22,500 in cash. It is for bringing about this sale that plaintiff claims a commission.

It was under an agreement made by the defendant and the representatives for the bondholders that the receivership sale was made and the property bid in by defendant, and under a similar arrangement by the defendant and the representatives of the bondholders and of the Tungsten Production Company, that the foreclosure sale was made by which the defendant became the purchaser. The receivership sale and the foreclosure sale were both made to the defendant for the purpose of facilitating the sale of the property to the Tungsten Production Company. The defendant retained $12,500 of the $22,500 received for the property and distributed the balance, or $10,000, according

to an agreement it had with one A. D.. Castro of Honolulu, who held a power of attorney from bondholders representing more than $150,000 of the $250,000 indebtedness of the insolvent company. The $12,500 advanced by the defendant was advanced at the request of said Castro acting as the representative of said bondholders. The court found as follows:

"The court finds that the allegation as to the existence of an express contract set forth in plaintiff's first cause of action is not supported by the evidence. As to plaintiff's second cause of action, the court finds that the plaintiff was instrumental in securing a purchaser and in making the sale of the property mentioned in plaintiff's complaint for the sum of $22,500, and that the reasonable value of plaintiff's said services in that connection is $1,000 instead of $2,250 as alleged in plaintiff's second cause of action. The court further finds that there was an implied contract existing between the defendant and plaintiff for plaintiff's services in obtaining a purchaser for the said property and that there is now due from defendant to plaintiff the sum of one thousand ($1,000) dollars for such services * * * together with his costs of suit."

It is contended that the finding of an implied contract on which the judgment was rendered was unauthorized, for the reason that there is no allegation in the complaint that the defendant was the owner of the mining property, or no evidence to prove such ownership. In support of this contention it is argued that the evidence shows that the defendant held the title to the property as a mere trustee for the real owners, who were the bondholders. A trustee, however, may become liable to one for compensation for effecting a sale of the trust estate. 26 R. C. L. 1316, 1317. Ownership, or the character of the ownership of property by a person from whom a broker's compensation is claimed for effecting its sale, is immaterial and need not be alleged or proved in an action for the recovery of such compensation. The right of a broker to a commission for the sale of property depends upon a

contract of employment, express or implied. 4 R. C. L. pp. 297, 298. "One who employs a broker to find a purchaser is usually liable for the compensation regardless ·of the nature of his interest in the property, and regardless of whether or not he has any interest in it whatsoever." 9 C. J. p. 586. We perceive no logic in the claim that the contract may not be implied.

■ The evidence in this case shows without dispute that plaintiff was instrumental in bringing about the sale of the property from the defendant to the Tungsten Production Company, Inc. There is also, in our opinion, sufficient evidence from which a promise on the part of Shockley as the agent of defendant to pay the plaintiff a reasonable compensation may be inferred.

The judgment is affirmed.