WALTER E. HERRMANN AND FERN E. HERR-
MANN, APPELLANTS, v. AUGUST BLASE,
RESPONDENT.

No. 4321

March 2, 1961                    359 P.2d 745

*Streeter and Sala,* of Reno, for Appellants.

*Richards and Swanson,* of Reno, for Respondent.

## OPINION

By the Court, PIKE, J.:

This is an appeal from a judgment of the trial court in favor of respondent in the sum of $30,400.

The court found that appellants and respondent had entered into an oral contract that Blase was to contribute his personal services and finance the improvements on appellants' ranch property, and that appellants

promised to pay Blase the sum of $31,000 therefor; that the contract was fully performed by Blase, and that the appellants breached the said contract on or about June 28, 1955; that the sum of $600, representing one-half of $1,200, received by Blase from lessors of certain grazing rights of the ranch, was due and payable to appellants and should be applied as a setoff against the $31,000 found to be due Blase, leaving a balance due respondent Blase of $30,400. Appellants appeal from the judgment based upon such findings.

The former owner of the Nevada potato ranch referred to herein was adjudicated a bankrupt in bankruptcy proceedings had in California. Walter E. Herrmann, one of the appellants herein, a California electrical contractor at the time of the bankruptcy adjudication, held a promissory note in the approximate amount of $144,000, secured by a deed of trust upon the ranch property. Herrmann, as a secured creditor, filed his claim in the bankruptcy proceeding.

Respondent Blase, who had for many years been engaged in the wholesale produce business, and who was familiar with the particular ranch then constituting an asset of the bankrupt's estate, also filed a creditor's claim in the bankruptcy proceeding on behalf of Blase Bros., the produce firm of which Blase was a member. Such claim was unsecured and was for the sum of $36,000, representing funds advanced to the bankrupt's ranching business in connection with a potato transaction prior to the bankruptcy. The evidence shows that about December 1, 1953, as the trustee in bankruptcy had been unable to effect a sale of the ranch, the bankruptcy court ordered the ranch conveyed to Herrmann. Herrmann and Blase were both present at the court session at which the order was entered. Prior to that date Blase had rendered services for the trustee in bankruptcy in connection with the ranch and his services in that regard terminated when the court ordered the ranch conveyed to Herrmann. Blase, while so acting for the trustee in bankruptcy, had among other things started proceedings to protect the range rights of the ranch. Blase testified that on the day of

the court hearing above referred to he advised Herrmann that the range rights of the ranch were in jeopardy, and of the action instituted by Blase before the grazing authorities for the purpose of protecting such rights. Blase also informed appellants that he had cleaned up the ranch and made it more presentable for sale. Blase testified further, "And at that time Mr. Herrmann asked me if I would consider remaining in the same capacity for him and in return for my services he would see that I was taken care of for as near as possible the amount of money that I had lost with the previous owner"; that respondent accepted Herrmann's offer at the time that it was made, about December 1, 1953, and that the amount then discussed between Herrmann and Blase as being due Blase was $36,000.

Blase further testified that thereafter he sought and obtained a reestablishment of the range rights and performed other services relating to the improvement of the ranch; that Herrmann accompanied Blase to the hearing upon the application for grazing rights, which Blase had previously filed on behalf of Herrmann; that early in 1954 respondent Blase incurred expense of about $700 for the repair of a water pump and additional expenses involving trips relating to the employment of laborers to clean up the ranch and show the ranch to prospective purchasers; that Blase was reimbursed for such expenses so incurred by the payment to him by Herrmann of $1,000, the balance over the actual expenses to be applied as partial compensation for respondent's services up to that date; that extensive cleaning up and repair operations to the ranch property, including land, structures, machinery and equipment were conducted under Blase's supervision; that Blase also effected the cleaning of ditches, repair of fences, reestablishment of ranch boundary stakes, leveling about 70 acres of land, and took action to acquire additional water rights for the ranch; that Blase advised Hermann that Blase had listed the ranch at a sale price of $175,000; that Herrmann advised Blase the amount that Herrmann had invested in the ranch was $144,000 and that Herrmann told Blase that all

Blase received over and above that sum could be retained by Blase. In April 1954 one Sanchez agreed to buy the ranch from appellant under a written six months' lease-purchase agreement, and respondent pursuant to a written agreement between him and Sanchez was to assist in the operation of the ranch. Although the sale price stated in the April 1954 agreement between Herrmann and Sanchez was $144,000, respondent testified that the actual sale price was $175,000; that Herrmann would receive $144,000 and Blase would receive $31,000. Blase was with Sanchez on the ranch from about May 1 to October 21, 1954, during which time, besides carrying on ranching operations, the irrigating system was improved by the rebuilding of a dam and the repairing of ditches. Repairs to the ranch house and other structures were also made. About September 1954 Sanchez notified Herrmann that Sanchez was unable to conclude the purchase of the ranch and thereafter, although the time originally designated by Herrmann for Sanchez to leave the ranch was October 1954, this time was subsequently extended for 60 days, and after Sanchez left Blase remained there. Blase testified that in October 1954 Herrmann advised him that, if Sanchez left the ranch, Blase's "interest"[1] in the ranch would be retained by Blase, if Blase would stay on the ranch and keep it active; that again in January 1955, when Herrmann gave written notice to Sanchez that the rights of Sanchez under the purchase agreement were terminated, appellants reaffirmed, to Blase, Herrmann's recognition of Blase's "interest" in the ranch.

Blase continued to spend the majority of his time at the ranch, according to his testimony, until near the end of June 1955. Blase left the ranch shortly after appellants arranged for one Cliff Gregor to operate and manage the ranch. In May 1955 Herrmann paid Blase $500 which, according to Blase's testimony, was to cover expenses and, according to Herrmann's testimony,

---

[1]The word "interest" appears to have been used in a colloquial sense. NRS 111.205 provides that no interest or estate in lands other than leases for not exceeding a term of one year, shall be created or granted, unless by operation of law or by written conveyance signed by the party granting or conveying the same.

was salary paid to Blase. Blase's testimony was corroborated in many particulars by that of both Sanchez and Gregor. The testimony of other witnesses, and written evidence, tended to corroborate other portions of Blase's testimony.

Herrmann denied Blase's version of the conversation had between them about December 1, 1953. Herrmann testified he had no information concerning certain work or improvements which Blase claimed to have performed on the ranch; that he did not know conditions at the ranch; did not make trips to the ranch; was busy in California with his other interests during the period of February 17 to April 21, 1954 when, according to Blase's testimony, cleaning up and other improvement work was being done at the ranch; that he paid nothing for labor or gasoline for any cleaning up and other work done on the ranch by Blase; that, while recognizing that Blase had leveled land at the ranch, Herrmann had paid nothing toward the cost of such work.

Respondent's complaint, alleging two causes of action, was filed in Ormsby County, Nevada on June 11, 1959. Respondent, on appeal, abandoned his first cause of action and, accordingly, the same, together with appellants' specification of error directed to such cause of action, is not discussed in this opinion. The second cause of action alleged that from December 1, 1953 to June 30, 1955 respondent performed services on the ranch at appellants' request; that appellants refused to pay respondent for the same and to reimburse respondent for expenditures made by respondent for and on behalf of appellants upon said property, all to respondent's damage in the sum of $35,000. The remaining specification alleged that the court erred in the measure of damages, in awarding to respondent remote and speculative damages rather than damages based upon the reasonable value of respondent's services and expenditures performed pursuant to the contract.

The trial court found that there was an oral contract between the parties; that appellants promised to pay to respondent the sum of $31,000; the performance by

respondent; and the breach by appellants. There is substantial evidence supporting this finding, and the judgment based thereon must be affirmed. The evidence is undisputed that the basis for the bankruptcy court's action in ordering the ranch conveyed to Herrmann by the trustee in bankruptcy was that the trustee had been unable to sell the ranch. Herrmann's claim in bankruptcy based upon a secured indebtedness upon the ranch was in the amount of about $144,000, and it may properly be inferred that the trustee was unable to effect a sale in excess of the last mentioned amount. However, in April of 1954 after the ranch had been conveyed to Herrmann in February 1954, a contract for the sale of the ranch to Sanchez for $175,000 was entered into. This was $31,000 more than the $144,000 that Herrmann had invested in the same. The court was entitled to accept the testimony relating to this transaction as showing not only what appeared to be an increased value of the ranch properties, but the determination as between Blase and Herrmann that the sum of $31,000 was the measure of the compensation to be paid Blase for the improvement at the ranch, through his services and the expenditures made by him for the benefit and improvement of the ranch property. Accordingly, under the court's finding that there was an oral contract between Blase and Herrmann, the sum of $31,000 may be viewed as the agreed compensation arrived at as the quantum meruit. These circumstances are not substantially altered, so far as the evidence supporting the findings and judgment are concerned, even though for the period between April 1954 and February 1955 during which Blase was on the ranch with Sanchez under an agreement with Sanchez is considered as having involved services and expenditures made by Blase under conditions where recompense for the same could not properly be expected by Blase from Herrmann. The record shows that such last mentioned circumstances were fully considered by the court and under its consideration at the time it entered the findings and judgment. The court did, however, also have before it the evidence that, after Sanchez notified Herrmann he was

unable to proceed with the purchase of the ranch, about September 1954, after conversations between Blase and Herrmann, Blase continued to stay on the ranch, and that again when Sanchez actually left the ranch in February 1955 Blase continued on performing services and making expenditures, having the effect of improving the ranch and assisting Herrmann, who denied familiarity with conditions at the ranch. We conclude that the evidence shows the amount which Herrmann agreed to pay to Blase at the time of the Sanchez transaction in 1954 was the sum of'$31,000. Under these conditions, in this action by Blase for recovery upon the basis of quantum meruit, the agreed $31,000 became the quantum meruit. Warren v. Glasgow & Western Exploration Co., 40 Nev. 103, 160 P. 793; Burgess v. Helm, 24 Nev. 242, 51 P. 1025.

Affirmed, with costs to respondent.

BADT, C. J., and McNAMEE, J., concur.