CHAUNCEY FLOREY, MARJORIE FLOREY, GENE
L. BROWN and JEAN BROWN, Appellants, v.
JOHN SINKEY, Respondent.

No. 4351

June 2, 1961                                    362 P.2d 271

*Springmeyer, Thompson and Dixon,* of Reno, and
*Gene L. Brown,* of Grants Pass, Oregon, for Appellants.

*Breen, Folsom, McDonald and Young,* of Reno, for
Respondent.

## OPINION

By the Court, PIKE, J.:

This is an appeal from a judgment entered in favor of respondent, against each appellant, for the sum of $8,400 as compensation due respondent for having procured one Kaufmann as a purchaser of a mining property owned by appellants. Appellants were the owners of a group of tungsten mining claims in Mineral County, Nevada, known as the Silver Dyke property. On April 1, 1955, by written agreement, appellants agreed to sell the property to one Kaufmann for the sum of $300,000. Kaufmann as purchaser delivered to appellants a promissory note for $50,000 as well as other promissory notes and certain corporate stock on account of the agreed purchase price. The $50,000 note was subsequently paid by Kaufmann and after Kaufmann had been adjudicated bankrupt the other notes were submitted by appellants as claims in the Kaufmann bankruptcy. Kaufmann operated the mining property for several months and removed ore of considerable value, upon which he also paid $34,000 in royalties to appellants.

The sale by appellants to Kaufmann had the following factual background. Respondent Sinkey was president of Nevada Tungsten Corporation which owned a tungsten mill in Mineral County. He introduced appellant Chauncey Florey to one James Keyser, a mining engineer and prospective purchaser of the Silver Dyke properties. Thereafter Keyser and his associates organized the Industrial Tungsten Corporation, of which Keyser was president and a director, and of which said Kaufmann was also a director. On February 8, 1955 said corporation entered into a written agreement as purchasers, with Florey and the other appellants as sellers, to purchase the Silver Dyke properties for $400,000, and on March 11, 1955 a supplemental agreement was

entered into between the same parties and a note for $50,000 payable to appellants herein executed by Industrial Tungsten Corporation and endorsed by Keyser and Kaufmann was attached to the same. Kaufmann in the meantime had succeeded Keyser as president of the corporation.

On April 1, 1955 appellants and Industrial Tungsten Corporation executed an agreement canceling the agreement of sale between them dated February 8, 1955, Kaufmann signing as president of the corporate signatory. On the same date, Kaufmann and appellants entered into the agreement between them hereinabove referred to. On account of the agreed sale, 400,000 shares of Industrial Tungsten Corporation stock were issued and delivered to appellants, together with the said $50,000 promissory note of that corporation, bearing the endorsements of Keyser and Kaufmann, and certain other promissory notes as part of the agreed purchase price to be paid by Kaufmann. Kaufmann was adjudged bankrupt. There is nothing in the record showing that appellants ever received any cash from the corporate stock, or from the notes filed in the Kaufmann bankruptcy. The $50,000 received as payment of the promissory note, and the royalties of $34,000, or a total of $84,000, were received by appellants as a result of the sale of Kaufmann.

On July 25, 1957 respondent, as plaintiff, brought action against appellants, alleging that appellants promised to pay Sinkey the reasonable value of his services if Sinkey would procure a purchaser for the mining property; that by reason of Sinkey's informing Kaufmann and interesting him in the purchase, the agreement of April 1, 1955 had been entered into between appellants and Kaufmann and that appellants had received substantial sums of money from Kaufmann under said agreement. Sinkey sought judgment against appellants for $30,000. Appellants' answer denied having entered into the agreement to pay any compensation to Sinkey, and alleged as additional defenses (1) that Sinkey acted as agent for Kaufmann without the knowledge or consent of appellants; (2) that Sinkey secretly

participated in the purchase of the property; and (3) that Sinkey realized a secret profit from the purchaser of the property, without the knowledge or consent of appellants. In connection with the last-mentioned defenses, evidence was introduced showing that some 182,994 shares of Industrial Tungsten Corporation stock were issued to Sinkey on February 18, 1955. Sinkey denied having received the stock.

Upon conflicting evidence the trial court found in favor of respondent and against appellants upon the issues referred to, and entered the judgment herein appealed from.

The court found that there was an agreement between Florey and Sinkey whereby Sinkey undertook to find a buyer for the mining properties; that he made trips and contacted persons and firms with venture money in efforts to interest them in such purchase; that he conducted prospective purchasers to the mining properties; that Sinkey spent some of his own funds in connection with such efforts. The court reviewed the several agreements entered into and found that it was not established that the Industrial Tungsten Corporation stock was delivered to Sinkey and found that stock had no value "at any time"; that on October 1, 1955 Nevada Tungsten Corporation and Kaufman agreed that Kaufmann would cause tungsten ore to be milled at the corporation's mill; that the evidence established the existence of a custom in the particular Nevada locality which provided that the seller of mining property should pay 10 percent of the consideration actually received by him to the person who was the procuring cause of the sale, and that said custom was sufficiently known to charge Florey with constructive knowledge of the same; that Sinkey was the procuring cause of the sale of the properties to Kaufmann, who paid $84,000 to appellants; that although the evidence did not establish that appellants agreed to pay Sinkey a definite amount as a commission, there was an implied agreement to pay Sinkey the reasonable value of his services; that the reasonable value of the services performed by Sinkey was

$8,400; that Sinkey had not acted as agent for Kaufmann and had not secretly participated in the purchase of appellants' property without the knowledge or consent of appellants.

While it is true that any written evidence, consisting principally of correspondence, relating to an express agreement on the part of Florey to pay reasonable compensation to Sinkey was fragmentary and far from specific with reference to either an offer by Florey or an acceptance by Sinkey, such evidence was supplemented not only by Sinkey's testimony that Florey agreed to pay Sinkey for his services but by evidence of the above referred to custom relating to the payment of the person producing a buyer of mining property. The trial court found that there was an implied agreement on the part of Florey to pay Sinkey the reasonable value of his services, and as there was substantial evidence in support of such finding, as well as the other findings of the trial court, the same may not be disturbed on this appeal. The amount found to be the reasonable value of Sinkey's services was the same as 10 percent of the $84,000 found to have been actually received by Florey from Kaufmann. In effect, the sum found to be due Sinkey as compensation for his services, under the established custom of the mining locality, became the reasonable value of such services. Herrmann v. Blase, 77 Nev. 127, 359 P.2d 745; Tamney v. Scheeline Banking & Trust Co., 53 Nev. 7, 290 P. 1027; Siebert v. Smith, 49 Nev. 120, 239 P. 396.

Additional specifications of error by appellants are: (1) that Sinkey was permitted, over objection, to state his opinion concerning the reasonable value of the services rendered by him. We find no merit in the assigned error. Sinkey was a competent witness to so testify and the court could determine the weight to be given to his testimony. Coogan Finance Corp. v. Beatcher, 120 Cal. App. 278, 7 P.2d 695.

(2) One McBoyle testified concerning certain instances of compensation having been paid to persons procuring the sale of mining properties in the locality, and appellants specify error on the part of the trial court in denying appellants' motion to strike such testimony as not being based upon any established custom or usage in the community but rather upon particular instances. As other witnesses shown to be experienced mining men of the locality testified concerning the established custom or usage, error, if any, in denying the motion to strike was harmless.

(3) Appellants specify as error the trial court's action in permitting the same witness, McBoyle, to answer, over objection, a certain hypothetical question, which sought to elicit the witness' opinion relative to the reasonable value of Sinkey's services. In the hypothetical question, the amount referred to as having been received by the sellers was erroneously stated as $130,000 rather than the $84,000 shown by the evidence. The witness answered the question by stating that the person procuring the buyer would be entitled to 10 percent of the money received by the sellers without specifying any amount. Such answer was permitted to stand without a motion to strike being made. Under the circumstances, any error was harmless.

(4) Appellants' remaining contention requiring consideration is that there was no basis in the evidence for a judgment against appellants Marjorie Florey, Gene L. Brown and Jean Brown. The trial court denied appellants' motion to dismiss the action as against those three appellants and for entry of judgment in their favor.

Appellants' principal argument is that the joint tenancy relationship did not operate to bind the designated appellants. There was, however, evidence to the effect that appellant Chauncy Florey, after acquiring the property in 1951, caused title to the same to be placed in the names of himself, his wife Marjorie Florey, Gene

L. Brown and his wife, Jean Brown, as joint tenants, and that Chauncey Florey was the individual who had active charge and control of the Silver Dyke properties and who conducted all negotiations for their sale. The evidence, including the documents introduced as exhibits, shows that the other three joint tenants signed each of the agreements hereinabove referred to and that each of them was also designated as an assignee of certain interests in land given as security by Kaufmann for the payment of the $50,000 note which he had endorsed and which note was ultimately paid by him. There was also evidence that these three appellants ratified and confirmed Florey's actions by signing the agreements, and accepting the benefits of the agreement with Kaufmann. While the court did not make a specific finding that Chauncey Florey acted for and on behalf of the other three joint tenants and appellants herein, such a finding will be implied to support the judgment rendered against each of them. Krick v. Krick, 76 Nev. 52, 348 P.2d 752. There is substantial evidence to support such a finding and judgment.

Affirmed, with costs to respondent.

McNAMEE, J., and BROWN, D. J., concur.

BADT, C. J., having disqualified himself, the Governor designated Honorable Merwyn H. Brown, Judge of the Sixth Judicial District Court, to sit in his place and stead.